**2022-1649**

# United States Court of Appeals for the Federal Circuit

ZIRCON CORP.,

*Appellant,*

– v. –

INTERNATIONAL TRADE COMMISSION,

*Appellee,*

STANLEY BLACK & DECKER, INC., BLACK & DECKER (U.S.) INC.,

*Intervenors.*

*On Appeal from the United States International Trade Commission in Investigation No. 337-TA-1220*

## RESPONSE BRIEF OF INTERVENORS STANLEY BLACK & DECKER, INC. AND BLACK & DECKER (U.S.) INC.

BRYAN P. COLLINS
JACK S. BARUFKA
ROBERT M. FUHRER
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, Virginia 22102
(703) 770-7900
bryan.collins@pillsburylaw.com
jack.barufka@pillsburylaw.com
robert.fuhrer@pillsburylaw.com

KECIA J. REYNOLDS
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1700
keciareynolds@paulhastings.com

THERESA A. ROOZEN
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
(202) 663-8000
theresa.roozen@pillsburylaw.com

*Counsel for Intervenors*

NOVEMBER 21, 2022

# PATENT CLAIMS

**U.S. Patent No. 6,989,662**

1. A method of recalibrating a stud sensing device for finding a location of a stud positioned behind a surface, the method comprising the acts of:

holding the stud sensing device at a first location on the surface;

placing the stud sensing device in an [sic] calibration mode;

sensing a first density at the first location in the calibration mode;

setting a calibration value based on the first sensed density;

placing the stud sensing device in an operating mode;

moving the stud sensing device to a second location on the surface;

sensing a second density at the second location;

setting a second density value based on the second sensed density;

the stud sensing device determining if it was calibrated over or near a stud; and

the stud sensing device recalibrating itself if it determined that the stud

sensing device was calibrated over or near the stud.

* * *

17. A method of recalibrating a stud sensing device for finding a location of a stud positioned behind a surface, the method comprising the acts of:

holding the stud sensing device at a first location on the surface;

placing the stud sensing device in an [sic] calibration mode;

sensing a first density at the first location in the calibration mode

setting a calibration value based on the first sensed density;

placing the stud sensing device in an operating mode;

moving the stud sensing device to a second location on the surface;

sensing a second density at the second location;

setting a second density value based on the second sensed density;

determining whether the stud sensing device was calibrated over or near a stud;

recalibrating the stud sensing device if the stud sensing device was calibrated over or near the stud;

wherein the act of determining whether the stud sensory device was calibrated over or near a stud includes:

comparing the calibration value to the second density value; and

determining that the stud sensing device was calibrated over or near the stud if the second density value is more than a threshold amount less than the calibration value.

**U.S. Patent No. 8,604,771**

1. A hand tool for sensing a measurement behind a target surface, the hand tool comprising:

a housing;

a sensor coupled in the housing; and

a grip having a pair of three-dimensional concave finger holds positioned at opposite sides of the grip to provide an axis of rotation.

* * *

5. The hand tool of claim 1, further comprising:

a power button;

wherein the power button is positioned in one of the pair of three-dimensional concave finger holds.

* * *

9. The hand tool of claim 1, wherein the hand tool comprises a stud finder.

10. The hand tool of claim 1, wherein the sensor comprises a capacitive sensor.

* * *

13. A hand tool for sensing a measurement behind a target surface, the hand tool comprising:

housing means for providing a housing to the hand tool;

sensing means for sensing a hidden characteristic, wherein the sensing means is coupled in the housing means; and

gripping means for gripping and for providing an axis of rotation.

14. The hand tool of claim 13, further comprising a switching means to energize the tool.

15. The hand tool of claim 14, wherein the switching means is mechanical.

* * *

17. A method for using a hand tool against target surfaces, wherein the hand tool comprises a grip having a pair of three-dimensional concave finger holds positioned on the grip to provide an axis of rotation, the method comprising:

providing the hand tool;

holding the hand tool with a thumb at a first three-dimensional concave finger hold of the pair of three-dimensional concave finger holds and with a finger at a second three-dimensional concave finger hold of the pair of three-dimensional concave finger holds;

positioning the hand tool against a first target surface; and

rotating the hand tool about the axis of rotation relative to the finger and thumb.

**U.S. Patent No. 9,475,185**

1. A stud finder for sensing a measurement behind a target surface, the stud finder comprising:

   a housing;

   a sensor coupled in the housing; and

   only two depressed finger holds positioned at opposite sides of a grip allowing pivoting to provide an axis of rotation.

2. The stud finder of claim 1, further comprising:

   a power button;

   wherein the power button is positioned in one of the two depressed finger holds.

* * *

5. The stud finder of claim 1, further comprising a running board.

6. The stud finder of claim 5, wherein the running board isolates a thumb and a finger from the target surface.

7. The stud finder of claim 5, wherein the running board distances a thumb and a finger from the target surface.

8. The stud finder of claim 5, wherein the running board inhibits a thumb and a finger from inadvertently touching the target surface

9. The stud finder of claim 5, wherein the running board provides a barrier between:

   a thumb and a finger; and

   the target surface.

10. The stud finder of claim 1, wherein the housing forms an acute angle at a front edge in a side view for a side comprising one of the two depressed finger holds.

11. The stud finder of claim 10, wherein the acute angle is 70 degrees or less.

* * *

13. The stud finder of claim 1, wherein the housing forms a V-notch at a center of a front side in a top-down view.

14. A stud finder for sensing a measurement behind a target surface, the stud finder comprising:

housing means for providing a housing to the stud finder

sensing means for sensing a hidden characteristic, wherein the sensing means is coupled in the housing means;

gripping means for gripping and for providing an axis of rotation, wherein the gripping means comprises only two depressed finger holds positioned at opposite sides allowing pivoting to provide an axis of rotation; and

a running board means to distance a thumb and a finger from the target surface.

15. The stud finder of claim 14, further comprising a switching means, within the gripping means, to energize the stud finder.

* * *

17. A method for using a stud finder against target surfaces, wherein the stud finder comprises a grip having only two depressed finger holds allowing pivoting to provide an axis of rotation, the method comprising:

providing the stud finder with the only two depressed finger holds;

holding the stud finder with a thumb at a first depressed finger hold of the two depressed finger holds and with a finger at a second depressed finger hold of the two depressed finger holds;

positioning the stud finder against a first target surface; and

rotating the stud finder about the axis of rotation relative to the thumb and the finger.

* * *

22. The method of claim 17, further comprising distancing the thumb and the finger from the target surfaces with a running board.

Case: 22-1649 Document: 25 Page: 7 Filed: 05/05/2022

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2022-1649

**Short Case Caption** Zircon Corp. v. ITC

**Filing Party/Entity** Stanley Black & Decker, Inc. and Black & Decker (U.S.) Inc.

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/05/2022

Signature: /s/ Bryan P. Collins

Name: Bryan P. Collins

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Stanley Black & Decker, Inc. | | None |
| Black & Decker (U.S.) Inc. | | Stanley Black & Decker, Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Bryan P. Collins | Jack S. Barufka | Robert M. Fuhrer |
| Theresa A. Roozen | Kecia J. Reynolds | Brandon Howell |
| Alton Hare | Pillsbury Winthrop Shaw Pittman | Paul Hastings |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Zircon Corporation v. Stanley Black & Decker Inc., Case No. 19-cv-08044-DMR (Northern District of CA ) | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

TABLE OF CONTENTS

I. STATEMENT OF RELATED CASES ........ 1
II. JURISDICTIONAL STATEMENT ........ 1
III. STATEMENT OF THE ISSUES ........ 1
IV. STATEMENT OF THE CASE ........ 1
V. STATEMENT OF FACTS ........ 3
A. Prior Art Related to the ’662 Patent ........ 4
B. The Accused Products and the Prior Art Related to the ’771 and ’185 Patents ........ 6
C. Facts Related to Domestic Industry ........ 11
VI. SUMMARY OF THE ARGUMENT ........ 12
VII. ARGUMENT ........ 14
A. Standards of Review ........ 14
B. The Commission’s Determination That Zircon Failed to Satisfy the Domestic’s Industry’s Economic Prong Should Be Affirmed ........ 15
1. The Commission’s Determination That Zircon Improperly Aggregated Its Investments Should Be Affirmed ........ 16
a. The Statute Required Zircon to Meet the Domestic Industry Requirement for Each Asserted Patent ........ 19
i. The Commission’s Determination is Consistent with the Statute ........ 20
ii. The Commission’s Determination is Reasonable and Consistent with Its Prior Opinions ........ 22
2. Exclusion of the Bourque Declaration Was Not an Abuse of Discretion ........ 27
3. The Finding That the Simon Chip Evidence Was Unreliable Is Supported by Substantial Evidence ........ 30
C. The Commission’s Determination That the Asserted ’662 Patent Claims Are Invalid Should Be Affirmed ........ 33
1. The Clear and Convincing Standard Was Applied ........ 33

2. Substantial Evidence Supports the Commission's Factual Findings on the Obviousness of the Asserted '662 Patent Claims....34

a. Substantial Evidence Supports the Commission's Findings on the Scope and Content of the Prior Art....35

i. Substantial Evidence Supports the Commission's Findings on What Each Reference Teaches....35

ii. Substantial Evidence Supports the Commission's Finding That the Prior Art Was in the Same Field....39

b. Substantial Evidence Confirms the Only Difference Was Manual versus Automatic Recalibration....41

c. The Parties Agreed on the Level of Skill....42

d. Substantial Evidence Supports the Commission's Finding That a POSITA Would Be Motivated to Add Automatic Recalibration to Steber....43

e. Substantial Evidence Confirms the Combination Had a Reasonable Expectation of Success....47

3. The Commission's Invalidity Determination Is Legally Sound....49

4. Zircon's Cumulativeness Argument Is Incorrect....50

5. Zircon's Argument for Claim 17 Misreads the Commission's Opinion and Fails to Show Reversible Error....52

D. The Determination That the Asserted '771 and '185 Patent Claims Are Not Infringed and/or Are Invalid Should Be Affirmed....53

1. Substantial Evidence Supports the Finding That the '771 Patent Claims 1, 5, 9, and 10 and the '185 Patent Claims 1, 2, 5-11, and 13-15 Are Invalid....53

a. The Zircon 1 Meets the "Axis of Rotation" Limitation....53

b. Zircon's Cumulativeness Argument Is Incorrect....60

c. If Invalidity Over the Zircon 1 Is Reversed, the Infringement Finding Should Be Remanded....61

2. The Commission Was Correct That Zircon Did Not Prove a Violation of Claims 13-15 of the '771 Patent....63

a. The Non-Infringement Finding Was Correct............................63

b. If Non-Infringement Is Reversed for the '771 Patent Claims 13-15, Then Validity Should Be Also............................................64

3. Substantial Evidence Supports the Determination That Stanley Did Not Induce Infringement of the '771 and'185 Patents' Method Claims ..................................................................66

E. If the Court Decides Reversal Is Warranted, Remand for Consideration of the Remaining Issues on Which the Commission Took No Position Is Necessary ........................................71

VIII. CONCLUSION.............................................................................................72

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ariosa Diagnostics v. Verinata Health, Inc.*,
805 F.3d 1359 (Fed. Cir. 2015) ....................35, 47

*AstraZeneca LP v. Apotex, Inc.*,
633 F.3d 1042 (Fed. Cir. 2010) ....................68, 69, 70

*Bailey v. Dart Container Corp. of Mich.*,
292 F.3d 1360 (Fed. Cir. 2002) ....................66

*Beloit Corp. v. Valmet Oy*,
742 F.2d 1421 (Fed. Cir. 1984) ....................71

*In re Bigio*,
381 F.3d 1320 (Fed. Cir. 2004) ....................39

*Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*,
998 F.3d 1320 (Fed. Cir. 2021) ....................32

*Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*,
246 F.3d 1368 (Fed. Cir. 2001) ....................65

*Broadcom Corp. v. Int'l Trade Comm'n*,
28 F.4th 240 (Fed. Cir. 2022) ....................15, 16

*Broadcom Corp. v. Int'l Trade Comm'n*,
542 F.3d 894 (Fed. Cir. 2008) ....................29

*Certain Audio Digital-to-Analog Converters & Prods. Containing Same*,
Inv. No. 337-TA-499, Final Initial Determination (Jan. 13, 2005) ....................27

*Certain Elect. Imaging Devices*,
Inv. No. 337-TA-850, Comm'n Op. (Apr. 21, 2015) ....................27

*Certain Ground Fault Interrupters*,
Inv. No. 337-TA-739, Comm'n Op. (June 8, 2012) ....................25

*Certain Laser Bar Code Scanners, and Scan Engines, Components Thereof and Prods. Containing Same*,
Inv. No. 337-TA-551, Order 25 (July 17, 2006) ....................................................26

*Certain LED Lighting Devices, LED Power Supplies, and Components Thereof*,
Inv. No. 337-TA-1081, Initial Determination (Dec. 19, 2018) ..........................31

*Certain Solid State Storage Drives, Stacked Elecs. Components, and Prods. Containing Same*,
Inv. No. 337-TA-1097, Comm'n Op. (June 29, 2018) ......................................31

*Certain Television Sets, Television Receivers, and Television Tuners, and Components Thereof*,
Inv. No. 337-TA-910, Comm'n Op (Oct. 30, 2015) .........................................32

*Collins v. N. Telecom Ltd.*,
216 F.3d 1042 (Fed. Cir. 2000) ..........................................................................70

*Consolo v. Fed. Maritime Comm'n*,
383 U.S. 607 (1966)..............................................................................................35

*Constant v. Advanced Micro-Devices, Inc.*,
848 F.2d 1560 (Fed. Cir. 1988) ....................................................................43, 58

*Cytologix Corp. v. Ventana Med. Sys., Inc.*,
424 F.3d 1168 (Fed. Cir. 2005) ..........................................................................64

*DBN Holding, Inc. v. Int'l Trade Comm'n*,
26 F.4th 1363 (Fed. Cir. 2022) ....................................................................14, 30

*Donner Tech., LLC v. Pro Stage Gear, LLC*,
979 F.3d 1353 (Fed. Cir. 2020) ....................................................................39, 40

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018) ..........................................................................50

*Finnigan Corp. v. Int'l Trade Comm'n*,
180 F.3d 1354 (Fed. Cir. 1999) ..................................................................*passim*

*Fleming v. Cirrus Design Corp.*,
28 F.4th 1214 (Fed. Cir. 2022) ............................................................................49

*Genentech, Inc. v. Int'l Trade Comm'n*,
122 F.3d 1409 (Fed. Cir. 1997) ....................................................................15

*GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*,
976 F.3d 1347 (Fed. Cir. 2020) ....................................................................67

*Graham v. John Deere Co.*,
383 U.S. 1 (1966)....................................................................35, 41, 42

*Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*,
936 F.3d 1353 (Fed. Cir. 2019) ....................................................................15

*Hologic, Inc. v. SenoRx, Inc.*,
639 F.3d 1329 (Fed. Cir. 2011) ....................................................................53

*Hyosung TNS Inc. v. Int'l Trade Comm'n*,
926 F.3d 1353 (Fed. Cir. 2019) ....................................................................18, 20

*InTouch Techs., Inc. v. VGo Commc'ns, Inc.*,
751 F.3d 1327 (Fed. Cir. 2014) ....................................................................46

*John Mezzalingua Assocs. v. Int'l Trade Comm'n*,
660 F.3d 1322 (Fed. Cir. 2011) ....................................................................19, 31

*In re Keller*,
642 F.2d 413 (C.C.P.A. 1981) ....................................................................48

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................................................................*passim*

*Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*,
22 F.4th 1369 (Fed. Cir. 2022) ....................................................................14, 30, 61

*Lelo Inc. v. Int'l Trade Comm'n*,
786 F.3d 879 (Fed. Cir. 2015) ....................................................................24

*Liqwd, Inc. v. L'Oréal USA, Inc.*,
720 F. App'x 623 (Fed. Cir. 2018) ....................................................................50

*Littelfuse, Inc. v. Mersen USA EP Corp.*,
29 F.4th 1376 (Fed. Cir. 2022) ....................................................................59

*Martin v. United States*,
99 Fed. Cl. 627 (2011) ........................................ 60-61

*In re McDaniel*,
293 F.3d 1379 (Fed. Cir. 2002) ........................................ 53

*MobileMedia Ideas LLC v. Apple, Inc.*,
780 F.3d 1159 (Fed. Cir. 2015) ........................................ 34, 43

*Motorola Mobility, LLC v. Int'l Trade Comm'n*,
737 F.3d 1345 (Fed. Cir. 2013) ........................................ 18

*Norgren Inc. v. Int'l Trade Comm'n*,
699 F.3d 1317 (Fed. Cir. 2012) ........................................ 42

*Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.*,
520 F.3d 1358 (Fed. Cir. 2008) ........................................ 59

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
587 F.3d 1324 (2009) ........................................ 49

*Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*,
161 F.3d 696 (Fed. Cir. 1998) ........................................ 71

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
522 F.3d 1299 (Fed. Cir. 2008) ........................................ 60

*In re Queener*,
796 F.2d 461 (Fed. Cir. 1986) ........................................ 43

*Star Fruits S.N.C. v. United States*,
393 F.3d 1277 (Fed. Cir. 2005) ........................................ 14

*Suprema v. Int'l Trade Comm'n*,
796 F.3d 1338, 1345 (Fed. Cir. 2015) ........................................ 22, 25

*Surface Tech., Inc. v. Int'l Trade Comm'n*,
801 F.2d 1336 (Fed. Cir. 1986) ........................................ 13

*Union Carbide Corp. v. American Can Co.*,
724 F.2d 1567 (Fed. Cir. 1984) ........................................ 52

*In re Venner*,
262 F.2d 91 (C.C.P.A. 1958) ........................................................................49

*Versata Software, Inc. v. SAP Am., Inc.*,
717 F.3d 1255 (Fed. Cir. 2013) ...................................................................57

*VidStream LLC v. Twitter, Inc.*,
981 F.3d 1060 (Fed. Cir. 2020) ...................................................................14

*Vita-Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009) ...............................................................2, 69

<u>Statutes and Codes</u>

United States Code
Title 19 Section 1337 ....................................................................... *passim*

United States Code
Title 19 Section 1337(a)(1)(B) .........................................................................22

United States Code
Title 19 Section 1337(a)(2)....................................................................12, 16, 20

United States Code
Title 19 Section 1337(a)(3)...............................................................................22

United States Code
Title 19 Section 1337(a)(3)(A) .....................................................................11, 18

United States Code
Title 19 Section 1337(a)(3)(C) .....................................................................18, 31

United States Code
Title 28 Section 2111 .......................................................................................52

United States Code
Title 35 Section 112(f) ...............................................................................53, 63

<u>Rules and Regulations</u>

Code of Federal Regulations
Title 19 Section 210.43(b)(2)...........................................................................15

Code of Federal Regulations
Title 19 Section 210.43(b)(4)....................29

Code of Federal Regulations
Title 19 Section 210.45(c) ....................71

Other Authorities

Manual of Patent Examining Procedure
Section 903.08(b) (June 2020)....................60

## I. STATEMENT OF RELATED CASES

Intervenors, Black & Decker (U.S.) Inc. and Stanley Black & Decker, Inc. (collectively, "Stanley"),[1] concur with Zircon's statement of related cases.

## II. JURISDICTIONAL STATEMENT

Stanley does not dispute the Court's jurisdiction over this appeal from the U.S. International Trade Commission ("Commission" or "ITC").

## III. STATEMENT OF THE ISSUES

Zircon's issues 1-6 are better framed as "Was there substantial evidence to support the Commission's finding that . . . " to reflect the standard of review.

This appeal also involves the following issue:

7. Whether the Commission's exclusion of the declaration from Mr. Bourque ("the Bourque Declaration") was an abuse of discretion?

## IV. STATEMENT OF THE CASE

Stanley disagrees with Zircon's Statement of the Case as follows:

Zircon misstates the Commission's opinion as having "upheld the ID's [the Initial Determination's] findings of infringement of claims 1, 9 and 16" of U.S. Patent No. 6,989,662 (the "'662 Patent"), which are method claims. Zircon Brief at 4. The Initial Determination ("ID") found no direct infringement by Stanley and

---

[1] Black & Decker (U.S.) Inc. is a wholly-owned subsidiary of Stanley Black & Decker, Inc.

only found that use of the disputed products by Stanley's customers directly infringed those claims. Appx003770. That left Zircon with its induced infringement argument, but the Commission took no position on whether Stanley had the requisite intent for inducement. Appx000029; *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). Thus, the Commission did not uphold a "finding of infringement."

On page 6, Zircon mistakenly refers to claims 14 and 15 of U.S. Patent No. 9,475,185 (the "'185 Patent") as "means plus function" claims. The relevant term in claim 14 recites "gripping means" with the structure of "only two depressed finger holds positioned at opposite sides." Appx000162. The parties, however, agreed this term was "not subject to a means plus function interpretation." Appx016269 (emphasis added). *See also* Appx000053.[2]

On page 7, Zircon again misstates the record. Zircon claims that the Commission determined that Zircon did not satisfy the domestic industry's economic prong because its expert presented Zircon's investments "in the aggregate" and not "on a patent-by-patent basis." Instead, the Commission said that Zircon's aggregation approach failed to present its investments in a manner

[2] In contrast, the parties agreed the "gripping means" in claim 13 of the '771 Patent, which did not recite the "only two depressed finger holds positioned at opposite sides," was subject to a means plus function interpretation. Appx016269. *See also* Appx000052-000053 (noting the difference between "gripping means" in both patents).

that allowed the Commission to "quantify[] the amounts of the investments in each statutory category and determine[e] the significance of Zircon's investments with respect each of its asserted patents." *See* Appx000059. The Commission pointed out that Zircon could have offered evidence of its investments "that can be attributed to each asserted patent" (which would be patent-by-patent), *or* by relying on "its investments in articles that practice all of the asserted patents" (which would be for all patents), but failed to do either. Appx000062-000063.

Zircon claims that a certain percent estimate of its research and development investment for the Simon chip was "supported by sworn testimony, expert testimony, and corroborating evidence." Zircon Brief at 8. That also misstates the record because the ID found the "only evidence regarding the amount of Zircon's investments in the Simon chip is Mr. Bourque's representation," which the Commission upheld. Appx003884; Appx000065.

## V. STATEMENT OF FACTS

Zircon's Statement of Facts omits facts relating to the prior art, the accused products, and domestic industry. Stanley summarizes the relevant facts found by the Commission below. Further details are found in the argument sections discussing the substantial evidence supporting the Commission's findings.

### A. Prior Art Related to the '662 Patent

The Commission found that the primary reference for obviousness, Steber (U.S. Patent No. 6,593,754, Appx016812-016825), discloses a stud finder with every feature of the asserted '662 Patent claims, except automatic recalibration. Appx000032; Appx000034.

Specifically, during initial calibration, Steber senses the density behind the wall and sets and stores a first density value (f1) (the claimed "calibration value"). Appx016823 at 3:11-37, 4:1-29; Appx017639-017641 at QA112-117. As the user moves Steber's device along the wall to find an object, it continues sensing the density and sets a second density value (f2). Appx016823 at 3:11-37, 4:1-24; Appx017642 at QA118-120. Steber's device then compares that second value (f2) to the first (calibration) value (f1) to determine if the device was mistakenly calibrated over or near a stud; if so, then a buzzer or light instructs the user to restart in a different position and initiate a manual recalibration by pushing a button. Appx016823 at 4:1-40; Appx003781-003785 (adopted at Appx000032); Appx017624; Appx017635-017636; Appx017638; Appx017648-017649 at QA65, 92-95, 105, 136. Figure 13 below depicts the stud finder and Figure 2 shows the changing frequency measurements indicating density (y-axis) as the device moves toward, over, and away from a stud (x-axis):







Appx016814; Appx016821 at Figs. 2 and 13.

The Commission also found that each secondary reference, DE336, Miller and Sanoner, "teaches a sensor for the detection of objects behind walls that can recalibrate automatically," rather than manually, and thus "all of the limitations of the asserted claims are disclosed by Steber in combination with DE336, Miller and/or Sanoner," noting "[t]his point was undisputed[.]" Appx000032; Appx000034.

The Commission found that a person of ordinary skill in the art ("POSITA") "would recognize the benefit of adding automatic calibration to Steber to improve its stud finder in the same way" and concluded a POSITA would have been motivated to use automatic recalibration on Steber's stud finder and have a

reasonable expectation of success per *KSR*. Appx000035-000039. Accordingly, the Commission found all the asserted '662 Patent claims obvious. Appx000039.

### B. The Accused Products and the Prior Art Related to the '771 and '185 Patents

The '185 Patent is a continuation of the U.S. Patent No. 8,604,771 (the "'771 Patent"), and they share the same disclosure. Appx000135-000148; Appx000149-000162. The claims of both patents are directed to a grip with finger holds that allow for pivoting, and specifically about an "axis of rotation" relative to the user's finger/thumb.

The Zircon 1, a product previously sold by Zircon and shown below, is the only prior art at issue in this appeal regarding the '771/'185 Patents. Appx016257-016260.




Appx017481.

There is no dispute that the Zircon 1 is a stud finder with a housing and a sensor that senses objects behind walls. Appx003820; Appx003823; Appx003861-003862. The ID found that the Zircon 1 met the language "a grip having a pair of three-dimensional concave finger holds" in the '771 Patent's claim 1 and the '185 Patent claims 1's "only two depressed finger holds," and the Commission adopted that finding. Appx000013; Appx003822; Appx003861. The Commission also found that the Zircon 1 met the "two depressed finger holds" of the "gripping means" in the '185 Patent's claim 14, reversing the ID's treatment of the "gripping

means" in that claim as a means plus function clause because the parties stipulated it was not. Appx000055. The two concave finger holds of the Zircon 1's grip are shown below.




Appx018041 (discussed at Appx017813-017814 at QA114-115).

The dispute on appeal is whether the Zircon 1 meets the "axis of rotation" limitation in the independent claims. The Commission found the Zircon 1 met that limitation, reversing the ID's finding.[3] Appx000047-000049; Appx000053-

---

[3] The ID reached the opposite conclusion on both infringement and invalidity, finding no infringement because the accused products have a lateral ridge at the top of the accused "finger holds" that resists rotation and finding no invalidity because the Zircon 1 also had a lateral ridge. Appx003808-003809; Appx003811-003812; Appx003822-003823; Appx003847; Appx003851; Appx003861. The Commission reversed on both issues finding that the presence of the lateral ridge did not preclude infringement *or* invalidity because whether it

000055. For the aspect of the "axis of rotation" construction that "exclud[es] finger holds that are designed to resist rotational movement," the Commission cited Stanley's expert "who testified that the finger holds of the Zircon 1 are not designed to resist rotational movement." Appx000048 (citing Appx001842-001843 at 561:8-562:1; Appx017813-017814 at QA115); *see also* Appx012091-012095; Appx000042-000043 (claim construction). The Commission also relied on Zircon's concession that "there is no affirmative evidence" that the lateral ridge on the Zircon 1 prevents rotation. Appx004390 (cited at Appx000048-000049).

Finding the "axis of rotation" limitation met, the Commission concluded that independent claim 1 of both patents were anticipated and independent claim 14 of the '185 Patent was obvious (along with finding other claims anticipated/obvious that are not separately argued on appeal). Appx000047-000049; Appx000053-000055.

For claims 13-15 of the '771 Patent, the Commission affirmed the ID's finding that neither infringement nor invalidity was proven. That finding was based on the agreed means plus function construction for the "gripping means" in claim 13 and a lack of comparison of the corresponding structure disclosed in the specification to the grips in the accused products and the Zircon 1. *Compare*

---

resists rotation depends on whether the stud finder is held with multiple fingers. Appx000046-000050; Appx000053-000054.

Appx003812 *with* Appx003824; Appx000049. The Zircon 1's grip and finger holds are shown above, and the accused products' grip and finger holds are shown below along with the patents' disclosed design.




Appx017887-017888 (cited Appx000041); *see also* Appx017886.

For the method claims, claim 17[4] of both the '771 and '185 Patents, the last element requires "rotating" the device. The Commission affirmed the ID's non-infringement finding that Stanley has not "induced any customer to rotate the Accused Stanley Products" and Zircon "has not identified any explicit instructions provided by Respondents for rotating the Accused Stanley Products." Appx003814; Appx000047; Appx000052. The Commission also affirmed the ID's

[4] Claim 17 of the '771 Patent was not asserted, but its dependent claim 22 was.

finding that "Zircon failed to present evidence showing that anyone other than Zircon's expert (and his associates) ever actually performed the methods of claim 22 (and unasserted claim 17 from which it depends)." Appx000047; Appx000052.

### C. Facts Related to Domestic Industry

Zircon alleges domestic industry investment values for each category under § 1337(a)(3)(A)-(C). Zircon Brief at 51-54. Zircon presented its investments using a revenue-based allocation percentage based on all its products practicing any one or more of the three asserted patents ("the DI Products"). Zircon applied that percentage, which accounted for all the DI Products regardless of which patent(s) they practiced, to its total investment in each category. *E.g.*, Zircon Brief at 50-51.

The Commission found that Zircon's approach was "marred by its aggregation of its investments across all of its [DI Products]" and that "[s]uch aggregation is problematic here where multiple patents and numerous domestic industry products are at issue and where many of those domestic industry products practice less than all of the asserted patents." Appx000059. The Commission concluded that "[u]nder such facts, aggregating investments in different domestic industry products that practice different patents effectively precludes the Commission from quantifying the amounts of the investments in each statutory category and determining the significance of Zircon's investments with respect each of its asserted patents." *Id.*

## VI. SUMMARY OF THE ARGUMENT

Zircon had the burden of proving a domestic industry for each patent under which it alleged a violation of Section 337. Consistent with the statute and prior opinions, the Commission required Zircon to present its domestic industry evidence in a manner that enabled the Commission to quantify Zircon's investments and determine their significance with respect each asserted patent. However, Zircon failed in meeting its burden because it combined all its investments for all its DI Products regardless of which patents the products practice and presented those investments as a single, aggregated number. This prevented the Commission from being able to determine for any particular asserted patent whether "an industry in the United States, relating to <u>the articles protected by the patent</u> . . . exists or is in the process of being established" as required to find a Section 337 violation. 19 U.S.C. § 1337(a)(2) (emphasis added). Moreover, neither the ALJ's determination to exclude the Bourque Declaration nor the Commission's affirmance was an abuse of discretion, and substantial evidence supports the finding that evidence pertaining to the Simon chip investments was unreliable.

On patent infringement and invalidity issues, Zircon does not dispute claim construction or any other pure legal issue, so those issues are only reviewed for substantial evidence. Zircon's brief, however, focuses on its own evidence and

expert testimony, suggesting that because its own experts offered opinions favorable to Zircon, there was no substantial evidence to support the Commission's non-infringement and invalidity findings. That misapplies the standard.

Instead, the substantial evidence standard asks whether there was "such relevant evidence as a reasonable mind might accept as adequate to support" the Commission's findings. *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1362 (Fed. Cir. 1999) (quoting *Surface Tech., Inc. v. Int'l Trade Comm'n*, 801 F.2d 1336, 1340-41 (Fed. Cir. 1986)). The evidence accepted by the Commission meets that standard.

For example, the Commission's determination that the '662 Patent claims for an automatically re-calibrating stud finder were obvious was supported by extensive evidence that a POSITA would have: (1) good reason to automate the re-calibration function in Steber's stud finder in view of similar prior art that re-calibrated automatically and (2) a reasonable expectation of success. Appx000034-000039. Zircon, however, does not explain why that evidence was not of the type "a reasonable mind might accept as adequate." *Finnigan*, 180 F.3d at 1362. Instead, Zircon essentially re-litigates the factual issues resolved by the Commission, asserting its own expert testimony that it wishes the Commission had accepted.

Zircon takes the same approach for the '771 and '185 Patents. Instead of addressing head-on the evidence accepted by the Commission that the Zircon 1 had concave finger holds allowing the device to be rotated about an "axis of rotation," Zircon re-argues its own expert's testimony that the Commission rejected. Zircon also bases its arguments on requirements that are not included in either the claim language or the Commission's constructions, and thus irrelevant. Likewise, for the non-infringed claims, Zircon fails to meet the substantial evidence standard, again offering the same disputed factual contentions rejected by the Commission.

## VII. ARGUMENT

### A. Standards of Review

Zircon's statement of the standards of review is incomplete.

Evidentiary rulings are reviewed for abuse of discretion. *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1376 (Fed. Cir. 2022). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *DBN Holding, Inc. v. Int'l Trade Comm'n*, 26 F.4th 1363, 1369 (Fed. Cir. 2022) (quoting *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)); *VidStream LLC v. Twitter, Inc.*, 981 F.3d 1060, 1064 (Fed. Cir. 2020).

Waiver is also involved. Any issue or argument not raised in a petition for review before the Commission is "deemed to have been abandoned." 19 C.F.R. § 210.43(b)(2). *Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1362 (Fed. Cir. 2019); *Finnigan*, 180 F.3d at 1362-63.

### B. The Commission's Determination That Zircon Failed to Satisfy the Domestic's Industry's Economic Prong Should Be Affirmed

Zircon addresses domestic industry last in its brief. Stanley addresses this issue first because if affirmed, the remaining issues are moot. *Broadcom Corp. v. Int'l Trade Comm'n*, 28 F.4th 240, 251 (Fed. Cir. 2022).

Zircon argues that the Commission erred in finding that Zircon failed to satisfy the domestic industry requirement's economic prong by: (1) not accepting Zircon's aggregated investments; (2) excluding the Bourque Declaration from the evidentiary record; and (3) not crediting Mr. Bourque's testimony that a certain percent of Zircon's research and development ("R&D") investments were for the Simon chip. Zircon Brief at 54, 55, 60-62.[5]

---

[5] Zircon also alleges that the ID erred in holding that its alleged value-add percentage is not significant. Zircon Brief at 47. The Commission did not take a position on this, so this issue is not on appeal. Appx000059-000060; *Genentech, Inc. v. Int'l Trade Comm'n*, 122 F.3d 1409, 1414 n.5 (Fed. Cir. 1997).

### 1. The Commission's Determination That Zircon Improperly Aggregated Its Investments Should Be Affirmed

The statute requires Zircon to establish that "an industry in the United States, relating to the articles protected by the patent . . . exists or is in the process of being established." 19 U.S.C. § 1337(a)(2). Investments in the protected article(s) must be "significant" or "substantial." *Id.*; *Broadcom*, 28 F.4th at 250. Thus, Zircon was required, but failed to show that its investments with respect to the articles protected by each asserted patent were significant or substantial. Appx000059-000061.

The 53 DI Products practicing the three asserted patents partly overlap, and the number of products varies for each patent. Appx000059. Zircon's Venn diagram illustrates the overlap:




Appx000060 (citing Appx004742).

Because of the incomplete overlap, Zircon was required, but failed, to present its investments in covered products for each patent. But Zircon does not point to anywhere in the evidentiary record[6] that it presented its domestic industry investments on a product-by-product basis or patent-by-patent basis. Appx000061. Nor does Zircon point to anything in the evidentiary record showing its investments for the group of 14 products that practice all three patents. Appx000062-000063. Instead, Zircon combined its investments for all 53 DI Products for all three patents "without regard for whether or which patents they practiced" to serve as its alleged total domestic industry investments in each statutory category. Appx000061.

Zircon does not contest the Commission's factual findings. Indeed, the revenue-based allocation shown in its brief confirms that approach, as discussed in the facts section. Zircon Brief at 51-54. Rather, Zircon argues that the Commission's legal analysis was "stringent" and "non-flexible" and that the Commission should have credited its aggregated investments because all the DI Products are stud finders and the investments concerned stud finders. Zircon Brief at 15, 54-61.

---

[6] The Bourque Declaration cited by Zircon was excluded from evidence, as discussed in the next section.

Zircon relies on *Hyosung TNS*, *InterDigital Communications* and *Motorola Mobility*, claiming they stand for the proposition that any expenditure can support a domestic industry. Zircon Brief at 57. However, these cases address whether certain investments fall into the statutory categories of § 1337(a)(3)(A)-(C). That is not the issue on appeal. The issue instead is whether Zircon was required to "establish the existence of a domestic industry" for each patent, and more specifically whether the facts of this case involving numerous patents and different products required Zircon to do that by presenting its investments in a manner so the Commission could "quantify[] the amounts of the investments in each statutory category and determin[e] the significance of Zircon's investments with respect each of its asserted patents." Appx000059-000061. *Hyosung TNS* addressed whether investments from five years prior to the complaint could support a domestic industry. *Hyosung TNS Inc. v. Int'l Trade Comm'n*, 926 F.3d 1353, 1361-62 (Fed. Cir. 2019). *Motorola Mobility* addressed whether an operating system used in the protected article could support a domestic industry. *Motorola Mobility, LLC v. Int'l Trade Comm'n*, 737 F.3d 1345, 1351 (Fed. Cir. 2013). *InterDigital Communications* addressed whether the patent owner's license investments could qualify as "exploitation" under § 1337(a)(3)(C) if the protected articles are manufactured elsewhere. *InterDigital Commc'ns*, 707 F.3d at 1303-04. None of

these cases addressed Zircon's aggregated investments approach and do not support it.

*John Mezzalingua Assocs. v. Int'l Trade Comm'n*, 660 F.3d 1322, 1330-31 (Fed. Cir. 2011), which Zircon does not cite, is more relevant. In *John Mezzalingua*, this Court affirmed the Commission's finding that PPC failed to establish a domestic industry based on expenses under § 1337(a)(3)(C) for the '539 design patent because "PPC had presented no evidence of any investment in research and development that related specifically to the '539 design patent, nor did it offer any allocation of its investment to that patent." *Id.* at 1330. The Court stated that PPC had "the burden of proof on that issue," but failed to satisfy it because it did not "identify how much of its investment in research and development related to the design protected by the '539 design patent, as opposed to the '509 family more generally." *Id.* at 1331.

Similarly, Zircon failed to prove how much it invested in the DI Products on a patent or product grouping basis, as opposed to all DI Products "more generally." *Id.* Thus, the caselaw supports the Commission's determination that Zircon has not satisfied the domestic industry requirement for any patent.

a. The Statute Required Zircon to Meet the Domestic Industry Requirement for Each Asserted Patent

To the extent Zircon's argument claims that the Commission's requirement was an incorrect statutory interpretation, Zircon is wrong. The Commission's

opinion is consistent with the plain statutory language, as well as its long-standing, consistent rulings in its prior public opinions. Appx000059-000063.

i. The Commission's Determination is Consistent with the Statute

The statute requires a complainant to prove that "an industry in the United States, related to the articles protected by the patent . . . exists or is in the process of being established." 19 U.S.C. § 1337(a)(2). Establishing a domestic industry with respect to each asserted patent is necessary because "[s]ubparagraphs (B), (C), and (E) of paragraph [a](1)," which define the infringing importations that constitute a Section 337 violation, "apply <u>only if</u>" that industry requirement is satisfied. *Id.* (emphasis added); *Hyosung TNS Inc.*, 926 F.3d at 1361. Notably, the statute refers to "article<u>s</u> protected by the <u>patent</u>" rather than <u>patents</u> or articles in general, confirming the domestic industry requirement must be satisfied in connection with the articles for each asserted patent. 19 U.S.C. § 1337(a)(2) (emphasis added). Thus, a violation of the '662 Patent can be found "only if" there are sufficient investments in the "articles protected by the ['662] patent" to qualify as "an industry, in the United States[.]" *Id*. The same is true for the '771 and '185 Patents.

The Commission's requirement that Zircon had to prove "the existence of a domestic industry through significant or substantial investments with respect to articles" for each patent is therefore a straightforward reading of the statute.

Appx000061. Each patent Zircon sought to enforce is separate from the others, and the plain statutory language requires "an industry" for "articles protected by the patent" to establish a violation.

Contrary to Zircon's contention, the Commission never interpreted Section 337 or Commission precedent to mean that "a patent-by-patent breakdown of expenditures is absolutely required." Zircon Brief at 60. The Commission noted Zircon had other options, such as breaking out its investments by product groupings, or relying on its investments for the 14 DI Products allegedly covered by all three patents, thus using the same "articles protected by the patent" to satisfy the domestic industry requirement for each patent. Appx000062-000063 (finding Zircon did not do that). Zircon's contention that the Commission "absolutely required" a "patent-by-patent breakdown of expenditures" thus flatly misstates the Commission's opinion. The Commission simply required that "the existence of a domestic industry" must be proven for each patent and found that Zircon failed to do that, on a patent-by-patent basis or otherwise. Appx000061.

Further, Zircon seeks to create a domestic industry requirement unique to multi-patent cases. As the Commission recognized, Zircon's interpretation would allow investments for one asserted patent to inflate investments for the other patents, regardless of whether the domestic industry requirement could have been met for each patent individually. Appx000063 ("inflating the investments in

articles that are protected by a given patent with investments in articles that are not" is contrary to the statute); *see also* Appx000060 (pointing out Zircon's attempts to use the investments for '662 Patent products for the '771 and '185 Patent products, and "vice versa"). There is no reason to treat the domestic industry requirement differently to allow such "inflating" in a multi-patent proceeding with different products practicing different patents, in contrast to a single patent proceeding where the investments for that patent must stand alone.

Thus, the Commission correctly found Zircon's aggregated approach as precluded by the statute.

#### ii. The Commission's Determination is Reasonable and Consistent with Its Prior Opinions

The Commission's opinion is also consistent with its prior opinions and supported by sound reasoning. "There is no dispute that Congress has delegated authority to the Commission to resolve ambiguity in Section 337 if the Commission does so through formal adjudicative procedures." *Suprema v. Int'l Trade Comm'n*, 796 F.3d 1338, 1345 (Fed. Cir. 2015); *Interdigital Commc'ns*, 690 F.3d at 1330. Indeed, the existence of a domestic industry is unique to the Commission's enforcement of Section 337. 19 U.S.C. § 1337(a)(1)(B), (a)(3), (d-f).

Zircon does little to nothing to address the reasoning in the Commission's opinion for requiring "the existence of a domestic industry" for each patent,

Appx000061, and fails to acknowledge the same principle exists throughout the Commission's prior opinions involving multi-patent investigations. Instead, Zircon requests this Court to overrule years of Commission precedent and create a new "single industry" analysis. Zircon Brief at 55 ("the single industry developed by Zircon in its stud finders."), 57. This Court has never approved such an analysis. Nor is there any policy reason to do so, and the Commission has many reasons, articulated in the underlying opinion, to require a domestic industry for each patent. *See* Appx000059-000066.

For example, the Commission explained why Zircon's aggregated investments was problematic: it precluded "evaluat[ing] the investments and the significance of those investments with respect to each asserted patent." Appx000059. Thus, if the Commission found the '771 and '185 Patents valid and infringed, but not the '662 Patent, the Commission could not assess whether investments "relating to the articles . . . protected by the" '771 and '185 Patents are significant or substantial, as required by Section 337(a)(2), because Zircon's evidence left the Commission unable to figure out what part of its investments related to the remaining products covered by the '771 and '185 Patents. As the Commission pointed out, "90% of Zircon's investments in its domestic industry products could be attributable to products that practice the '662 patent, and only

10% could be attributable to products that practice the ’771 and ’185 patents. The opposite could also be true, or the distribution could be fifty-fifty.” Appx000059.

The Commission also explained its concern that crediting Zircon’s aggregated investments would result in “inflating the investments in articles that are protected by a given patent with investments in articles that are not,” as discussed above. Appx000063.

Indeed, this Court’s law requires the Commission to engage in a quantitative analysis when assessing the domestic industry requirement. *Lelo Inc. v. Int’l Trade Comm’n*, 786 F.3d 879, 883 (Fed. Cir. 2015). Thus, when the Commission rejected Zircon’s approach because it “effectively precludes the Commission from quantifying the amounts of the investments in each statutory category and determining the significance of Zircon’s investments with respect each of its asserted patents,” the Commission was correctly following this Court’s quantitative analysis requirement in *Lelo*. Appx000059 (emphasis added).

The Commission therefore provided sound reasons for interpreting Section 337 as precluding Zircon’s approach. Appx000061. Zircon does not explain in any meaningful way why the Commission’s reasoning is bad policy or based on incorrect facts. It just offers the conclusory statement that its position is supported by the “plain language of the statute,” but that is incorrect for the reasons explained previously. Zircon Brief at 58. The Commission’s well-explained reasons therefore

provide an additional reason to affirm because as long as the Commission's interpretation is reasonable, it prevails "whether or not it is the only possible interpretation or even the one a court might think best." *Suprema*, 796 F.3d at 1349 (quoting *Holder v. Martinez Gutierrez,* 566 U.S. 583, 591 (2012)).

Zircon also argues the Commission's analysis is inconsistent with prior Commission precedent, suggesting its opinion is an arbitrary departure. Zircon Brief at 58-59. But none of the opinions cited by Zircon support its aggregation approach.

Zircon cites *Certain Ground Fault Interrupters*, Inv. No. 337-TA-739, Comm'n Op. at 79 (June 8, 2012) for the proposition that "[w]hen one product is protected by multiple patents, the 'analysis should proceed on the basis that there is a single industry which exploits the patents.'" Zircon Brief at 59. That quote is divorced from the facts of the case. The complainant in that case established a domestic industry for one of the three patents asserted because it identified one group of products that practiced both the '124 and '151 patents, another group that practiced the '809 patent, and identified the investments for each group separately. *Certain Ground Fault Interrupters*, Inv. No. 337-TA-739, Comm'n Op. at 79-80. Thus, when the Commission concluded the domestic industry requirement's technical prong was not met for the '124 and '151 patents, it was still able to evaluate the economic prong for the '809 patent alone because the complainant

separately identified the investments for the products practicing just the '809 patent. *Id.* Zircon didn't take that approach and "[i]nstead, it aggregated its domestic industry products without regard for whether or which patents they practiced and then argued that a domestic industry in all of its products exists." Appx000061.

In *Laser Bar Code Scanners*, satisfaction of the domestic industry requirement for different patents was supported by the complainant's tables listing "the number of engineering employees on a patent-by-patent, product-by-product, and year-by-year basis." *Certain Laser Bar Code Scanners*, *and Scan Engines, Components Thereof and Prods. Containing Same*, Inv. No. 337-TA-551, Order 25 at 8-11 (July 17, 2006). Zircon did not present its evidence in that manner. Moreover, the Commission in the present proceeding noted that *Laser Bar Code Scanners* also involved products that practiced all the asserted patents and the complainant in that case "could establish a domestic industry based on the either of two articles that were covered by *all* of the asserted patents." Appx000062 (emphasis in original). As the Commission pointed out, Zircon could have used the same approach by relying "only on its investments in articles that practice all of the asserted patents" (the 14 DI Products in the middle of Zircon's Venn diagram), but Zircon "made no such attempt." Appx000063-000064.

The other cases Zircon cites also required a domestic industry for each patent. *Certain Audio Digital-to-Analog Converters & Prods. Containing Same*, Inv. No. 337-TA-499, Final Initial Determination at 113 (Jan. 13, 2005) ("complainant must demonstrate the existence of two domestic industries" for two asserted patents with non-overlapping products); *Certain Elec. Imaging Devices*, Inv. No. 337-TA-850, Comm'n Op. at 89 (Apr. 21, 2015)[7] (same) (discussed at Appx000062).

The Commission's domestic industry analysis is therefore flexible, contrary to Zircon's argument. The Commission accepts different approaches for showing investments in multi-patent proceedings that best fit the facts of the case. But through all the Commission opinions Zircon cites, the complainant was always required to satisfy the domestic industry requirement for each asserted patent. Commission precedent is therefore consistent with its opinion in this proceeding. Appx000061-000064.

#### 2. Exclusion of the Bourque Declaration Was Not an Abuse of Discretion

Zircon claims that it could not break out its investments by patent because it "does not maintain separate records to record its PP&E for each of the patents

---

[7] Zircon cited the ALJ's Initial Determination, portions of which were overturned. *Certain Elec. Imaging Devices*, Inv. No. 337-TA-850, Comm'n Op. at 1-2. The Westlaw version of the Commission Opinion, 2014 WL 12802433, is missing the last 38 pages. The full opinion is available on the ITC's docketing system.

separately." Zircon Brief at 50. Inexplicably, Zircon alleges five pages later that it can, and did, perform such an analysis, relying on the Bourque Declaration that was excluded from evidence. *Id.* at 55. Setting aside this remarkable inconsistency, neither the administrative law judge ("ALJ") nor the Commission abused its discretion in excluding the Bourque Declaration from the evidentiary record.

The ALJ excluded the Bourque Declaration as substantive evidence in Order No. 37 because, in response to Stanley's motion *in limine*, "Zircon represent[ed] that it is not seeking the admission of expert reports and declarations as substantive evidence." *See* Appx001258 (striking CX-0021, the Bourque Declaration); Appx018092. Zircon thereafter withdrew the declaration. Zircon never sought review of Order No. 37. Rather, relying on Order No. 41, Zircon cited the Bourque Declaration in its petition to the Commission despite Order No. 37. Appx001270-001271. As the Commission explained, however, Order No. 41 simply noted that the complaint and its exhibits were part of the <u>administrative</u> record–not the evidentiary record. Appx000061, fn. 25. Thus, Zircon was not permitted to "rely on Mr. Bourque's declaration as substantive evidence in direct contravention of Order 37." *Id.*

Zircon's own representation to the ALJ that it was not relying on the Bourque Declaration as substantive evidence should be binding. Requiring Zircon

to abide by that representation cannot be an abuse of discretion, and that alone is sufficient reason to affirm.

Moreover, the Commission's determinations concerning the ALJ's Order provide additional reasons to affirm. The Commission did not abuse its discretion by affirming the ALJ's Order No. 37 that "specifically excluded" the Bourque Declaration "as substantive evidence" and finding that Order No. 41 just admitted it as part of the administrative record. Appx000061, fn. 25. The Commission was also well within its discretion to: (1) find that Zircon "abandoned reliance" on the Bourque Declaration by not citing it in its post-trial briefs to the ALJ, (2) reject Zircon's attempt to rely on Order No. 41 in "direct contravention of Order 37" because Zircon was trying to evade the evidentiary ruling (and its own representation) by citing to a pleading rather than the admitted substantive evidence, and (3) decline to review Order No. 37 "*sua sponte*" because Zircon never sought review of Order No. 37. *Id. See* 19 C.F.R. § 210.43(b)(4); *see also id.* at § 210.24 ("Rulings by the administrative law judge on motions may not be appealed to the Commission prior to the administrative law judge's issuance of an initial determination, except in" circumstances not involved here); *cf. Broadcom Corp. v. Int'l Trade Comm'n*, 542 F.3d 894, 900 (Fed. Cir. 2008); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1362 (Fed. Cir. 1999).

At best, Zircon mentions the abuse of discretion standard, but fails to explain how the Commission's or ALJ's evidentiary rulings violated that standard. Zircon does not, and cannot, identify "an erroneous interpretation of the law" or "factual findings that are not supported by substantial evidence." *DBN Holding, Inc. v. Int'l Trade Comm'n*, 26 F.4th 1363, 1369 (Fed. Cir. 2022); *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1376 (Fed. Cir. 2022). Zircon also does not contend that the ALJ and Commission's rulings "represent[] an unreasonable judgment in weighing relevant factors." *DBN Holding, Inc.*, 26 F.4th at 1369. If there is anything "unreasonable," it is the fact that Zircon conceded to Order No. 37 based on its own representation, and then, once the failure of proof became evident, Zircon chose to act in "direct contravention of Order 37." Appx000061, fn. 25. There is nothing unreasonable about the Commission not allowing Zircon to act in "direct contravention" of the ALJ's order, as well as its own prior representation.

### 3. The Finding That the Simon Chip Evidence Was Unreliable Is Supported by Substantial Evidence

Zircon appeals the Commission's decision not to credit testimony estimating the percentage of Zircon's R&D investments for the Simon chip. Zircon Brief at 61-63. The Commission upheld the ALJ's credibility determination, finding the evidence unreliable. Appx000065.

Zircon's argument that the Commission must rely on uncorroborated evidence has two problems. Zircon Brief at 62. First, the cases cited by Zircon, at best, only allow reliance on uncorroborated evidence when there is no contrary evidence. *Certain Solid State Storage Drives, Stacked Elecs. Components, and Prods. Containing Same*, Inv. No. 337-TA-1097, Comm'n Op. at 20-22 (June 29, 2018); *Certain LED Lighting Devices, LED Power Supplies, and Components Thereof*, Inv. No. 337-TA-1081, Initial Determination at 140, 157 (Dec. 19, 2018).

Here, the ID cited contrary evidence. Appx003882. The ALJ noted that Mr. Schwarzenbach, Zircon's Vice-President of R&D, testified about whether any significant changes to "the 'basic methodology' behind recalibration" occurred during the relevant timeframe. *Id.* (citing Appx017247 at 177:8-17). That testimony dispels the notion that any alleged R&D investments in the Simon chip "related specifically" to the '662 Patent directed to recalibration. *John Mezzalingua Assocs.*, 660 F.3d at 1330 (patentee failed in establishing a domestic industry under § 1337(a)(3)(C) because it "presented no evidence of any investment in research and development that related specifically to the '539 design patent[.]"). Thus, Mr. Schwarzenbach's testimony supports the ALJ's finding that "Mr. Bourque's unexplained … estimate" was insufficient to establish the investment is substantial. Appx003884.

The unreliability finding was also justified by further substantial evidence that "Zircon fail[ed] to cite any documentary evidence supporting this contention" and that the expert who opined on the issue "did not conduct any independent investigation or review any documents." *Id.* If Zircon used the purported percentage of its R&D budget on the Simon chip and "[t]he Simon chip was the largest single R&D project undertaken by Zircon in the last decade" (Zircon Brief at 61), surely that would have been documented.

Hedging against its "no corroboration required" argument, Zircon contends Mr. Bourque's testimony was "corroborated by significant technical documentation[.]" Zircon Brief at 63. The two documents Zircon cites, however, are technical specifications with circuit drawings and the like that do not discuss the amount invested. The need to cite such unrelated documents confirms the lack of corroboration.

Second, the Commission, and this Court, typically rely on ALJ credibility determinations. *See, e.g. Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1336 (Fed. Cir. 2021); *Certain Television Sets, Television Receivers, and Television Tuners, and Components Thereof*, Inv. No. 337-TA-910, Comm'n Op at 65-66 (Oct. 30, 2015). Thus, there is no basis to disturb an ALJ's credibility determination.

Accordingly, the Commission's determination that Zircon did not establish a domestic industry should be affirmed.

### C. The Commission's Determination That the Asserted '662 Patent Claims Are Invalid Should Be Affirmed

#### 1. The Clear and Convincing Standard Was Applied

Zircon's Brief at 16-17 argues that the clear and convincing standard was not applied but does not identify where the Commission applied a different standard. Zircon's complaint seems to be that the Commission's opinion did not expressly use the words "clear and convincing."

That argument is flawed because the Commission reviewed the ID's obviousness analysis that was plainly conducted under the clear and convincing standard. Appx003738-003739; Appx003741; Appx003787; Appx003789-003791. Indeed, the Commission adopted "the findings in the ID that are not inconsistent with" its opinion. Appx000013. That included the ID's application of the clear and convincing standard.

The Commission also sought briefing on the '662 Patent invalidity issues "according to the analysis laid out in *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398 (2007)," Appx004311, and cited *KSR* throughout its final opinion, which plainly sets forth the clear and convincing standard. *KSR*, 550 U.S. at 478. The parties likewise applied that standard throughout their briefs to the Commission. E.g., Appx004526; Appx004552-004554; Appx004813; Appx004823-004824;

Appx004830; Appx004081; Appx004083; Appx004221; Appx004233; Appx004236; Appx004239; Appx004241; Appx004252-004254; Appx004365; Appx004367; Appx004369; Appx004378; Appx004387.

Thus the entire record confirms that a clear and convincing standard was applied.

#### 2. Substantial Evidence Supports the Commission's Factual Findings on the Obviousness of the Asserted '662 Patent Claims

The Commission's opinion made factual findings under the *Graham* factors, and then under *KSR* concerning the reason to combine the prior art and the reasonable expectation of success. Appx000030-000039. Stanley also follows that approach, except the factor relating to secondary considerations of non-obviousness is not included because Zircon did not challenge the finding that secondary considerations were not established either in its petition to the Commission or here on appeal. Appx000034-000035; Appx003795-003799.

As discussed below, Zircon's arguments that there was "nothing in the prior art" to support Stanley's obviousness contentions and that they were "conclusory," "hindsight," etc. are attorney exaggeration contradicted by substantial evidence. Zircon wants this Court to credit its expert over Stanley's expert and the express teachings in the references. That, however, is the role of the fact finder and not a matter to be re-weighed anew on appeal. *MobileMedia Ideas LLC v. Apple, Inc.*,

780 F.3d 1159, 1168 (Fed. Cir. 2015); *Consolo v. Fed. Maritime Comm'n,* 383 U.S. 607, 619–20 (1966).

#### a. Substantial Evidence Supports the Commission's Findings on the Scope and Content of the Prior Art

The first *Graham* factor is the "scope and content of the prior art." *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). The findings "as to the scope and content of the prior art" are reviewed for substantial evidence. *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1364 (Fed. Cir. 2015).

##### i. Substantial Evidence Supports the Commission's Findings on What Each Reference Teaches

As discussed in section V.A., *supra*, Steber meets all the '662 Patent claim limitations, except it is recalibrated manually, not automatically, and the Commission found that the automatic feature was taught by the other three references. Appx000032-000035; Appx017628-017630 at QA71–76 (cited Appx000035).

Substantial evidence supports the Commission's findings regarding DE336. Specifically, DE336 teaches automatic recalibration in a capacitive sensor that senses through a wall, and "disclosures throughout DE336 teach modifying other sensors to use the disclosed automatic recalibration function." Appx000033; Appx000037. Stanley's expert, Dr. William Messner, testified that DE336's sensor

initially determines a calibration value (Uref or Wref)[8] and then automatically updates that calibration value based on subsequent measurement values (Ua or Wa) when measuring through a wall. Appx017650-017652 at QA141-144; Appx017654-017655 at QA152; Appx017330-017331 at ¶¶ [0001] ("self-adjusting"), [0009]-[0014]; Appx017333 at ¶¶ [0027]-[0028]. Figure 5d of DE336 depicts automatically updating the calibration value (Uref) based on new measurement values (Ua):



Fig. 5d

Appx017347; Appx017982.

Substantial evidence also supports the Commission's finding's regarding Miller. Miller teaches automatic recalibration of a sensor that detects live wires behind walls. If Miller's device is calibrated over a live wire, as the device moves

---

[8] DE336 has an analog embodiment where the calibration value is labelled Uref and a digital embodiment where the calibration value is stored in a microprocessor and labelled Wref. Appx017345 at Fig. 4 and Appx017351 at Fig. 10; Appx017672 at QA198; Appx017982; Appx017983.

away from the wire the electric field level decreases; when there is a sufficient decrease, the device automatically recalibrates, as shown below. Appx000033; Appx017025 at ¶¶ [0039] and [0043]; Appx017653-017662 at QA147-150, 155-168.




Appx017021 at Fig. 7; Appx017984.

Substantial evidence also supports the Commission's finding that Sanoner's stud finder automatically repeats its calibrations. Appx000033; Appx017502 at ¶¶ [0128]-[0134] and Fig. 4; Appx017662-017664 at QA170-175. In step 31 of Figure 4, the Sanoner device performs a calibration. Then, the device checks for "successful calibration." If it is not successful, Sanoner's device automatically returns to step 31 (the blue loop) to calibrate again without requiring the user to repeat the first step (green), pressing the power button. *Id.*




FIGURE 4

Appx017489 at Fig. 4; Appx017987.

#### ii. Substantial Evidence Supports the Commission's Finding That the Prior Art Was in the Same Field

The Commission found that all the prior art references shared a common field: "sensors for the detection of objects or materials hidden behind a wall." Appx000033. Zircon does not address the legal test for relevant prior art, which is "'(1) whether the art is from the same field of endeavor, regardless of the problem addressed and, (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved.'" *Donner Tech., LLC v. Pro Stage Gear, LLC*, 979 F.3d 1353, 1359 (Fed. Cir. 2020) (quoting *In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004)).

Instead, Zircon argues that DE336 is "not analogous art to the '662 patent's field of invention" and that Miller is in a different art because it is a wire finder rather than in the art of "capacitive density sensing." Zircon Brief at 23, 30. Zircon's arguments contradict one another. On one hand, Zircon says that DE336 – a capacitive density sensor – is not in the same field, but on the other hand, when attempting to differentiate from Miller, Zircon contends the field is in fact "capacitive density sensing." *Id*. at 30 ("One of ordinary skill in the art (capacitive density sensing) . . . "). That shifting of the invention field to suit each reference should be enough to disregard Zircon's argument.

Moreover, the invention's field is also reviewed for substantial evidence. *Donner Tech.,* 979 F.3d at 1359. The evidence includes the '662 Patent's broadly stated Field of the Invention: "The present invention relates to sensors that detect objects, such as studs, behind a wall covering, such as sheetrock, and more particularly to sensors that detect and correct a miscalibration." Appx000112 at 1:7-10 (emphasis added). Dr. Messner testified similarly, pointing out that finding studs behind sheetrock in that field was an example ("such as"), and thus the field was more generally sensors that detect objects behind walls. Appx017620 at QA49; Appx017651 at QA143. That evidence supports the Commission's finding on the '662 Patent's field.

Substantial evidence also supports the Commission's finding that DE336 is in the same field, and specifically that it used capacitive sensing to detect through a wall like the '662 Patent. Appx000033-000034; Appx017620-017621 at QA50; Appx017649-017652 at QA140-141, 143-145 (citing express teachings in DE336). Zircon argues that DE336 only concerns stationary sensors, but the Commission expressly rejected that argument, quoting Dr. Messner's testimony that "the concept of recalibrating a sensor is independent of whether the sensor" is moved or stationary. Appx000033-000034 (quoting Appx017656 at QA154).

Substantial evidence likewise supports the Commission's finding that Miller is in the same field. The evidence showed that Miller's wire finder is similar to a

stud finder and used for the same purpose, to find objects (wires) behind walls. Appx017620-017621 at QA50; Appx017653-017656 at QA148-150, 155. Further, stud finders and wire finders are so closely related that their respective circuits were commonly included together in prior art devices – a point Zircon omitted. Appx017621-017622 at QA51-54; Appx017653 at QA147-148; Appx017661-017662 at QA163-168 (discussing Bijawat (Appx017431-017441), Franklin (Appx017577-017587), and Douglas (Appx017588-017601)). Sanoner is also a stud finder that includes wire detecting. Appx000033 (citing Sanoner as recognizing these devices "under the umbrella of 'apparatus for locating objects behind a wall lining.' [Appx017497 at ¶ [0002]"); Appx017502-017503 at ¶¶ [0136]-[0152]. Even Zircon's own expert conceded the '662 Patent's field is not limited to stud finders and includes electrical scanners. Appx002056 at 774:14-22.

#### b. Substantial Evidence Confirms the Only Difference Was Manual versus Automatic Recalibration

The second *Graham* factor is the "differences between the prior art and the claims at issue are to be ascertained." *Graham*, 383 U.S. at 17. The only difference between the '662 Patent and Steber is automatic versus manual recalibration. Appx000030; Appx000032; Appx000034. Relying on the substantial evidence discussed above, the Commission found that DE336, Miller, and Sanoner each "teaches a sensor for the detection of objects behind walls that can recalibrate automatically." Appx000032.

c. The Parties Agreed on the Level of Skill

The third *Graham* factor is the "level of ordinary skill in the pertinent art." *Graham*, 383 U.S. at 17. The POSITA's skill level for the '662 Patent was undisputed. Appx000031; Appx004265; Appx014657 at QA17 (Zircon's expert).

Substantial evidence supports the Commission's finding that "there was no question that Dr. Messner [Stanley's expert] is qualified" to testify on the obviousness of the '662 Patent. He received his master's degree and Ph.D. in mechanical engineering from the University of California at Berkeley and has more than 30 years of experience teaching engineers of all levels and working with automatic controls systems and sensors. Appx017608-017610 at QA3-10; Appx001754. *Norgren Inc. v. Int'l Trade Comm'n*, 699 F.3d 1317, 1325 (Fed. Cir. 2012).

Zircon complains that Dr. Messner has not written software for "production devices and has never programmed a stud sensor or tested whether it would have been possible to easily add auto-recalibration to a device like Steber." Zircon Brief at 22. However, the record confirms he has programming experience. Appx001763 at 482:6-7. And Zircon's own inventor testified that adding software to make a stud finder recalibrate automatically was "simply a matter of . . . redesigning the code," Appx016891 at 57:10-23, on which Dr. Messner also relied. Appx017637 at QA97; Appx017656-017657 at QA156.

Moreover, nothing in the claims requires a "production" level device. *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1570-71 (Fed. Cir. 1988); *In re Queener*, 796 F.2d 461, 463 (Fed. Cir. 1986) (claims obvious over Cade reference that was not "commercially viable"). Nor was software expertise required by the skill level that includes "mechanical or electrical engineering" and experience with "electronic hardware devices." Appx000031.

Thus, substantial evidence supports Dr. Messner's qualifications.

d. Substantial Evidence Supports the Commission's Finding That a POSITA Would Be Motivated to Add Automatic Recalibration to Steber

The reason to combine prior art is another factual determination reviewed for substantial evidence. *MobileMedia Ideas LLC v. Apple, Inc.*, 780 F.3d 1159, 1167 (Fed. Cir. 2015). Steber already included the ability to determine whether a calibration had been mistakenly taken over a stud. Thus, all that was needed was to automatically repeat the calibration process, rather than initiate it manually. Appx000032; Appx000036-000037; Appx016823 at 4:27-40; Appx017643-017644 at QA122.

Addressing that sole difference, substantial evidence supports the Commission's finding under the *KSR* standard that a POSITA would "recognize the benefit of adding automatic calibration to Steber to improve its stud finder in the same way" as the other references and be motivated to use automatic

recalibration in a stud finder like Steber's. Appx000036-000039. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007).

The substantial evidence includes Dr. Messner's extensive testimony explaining that a "POSITA would have had good reason to apply such automatically-initiated recalibration techniques in order to achieve the same predictable result of enabling the device to automatically recalibrate itself after a mistaken calibration near or over a stud." Appx017635 at QA93. He relied on the express teachings in the references and the POSITA's level of skill. He also explained the reasons a POSITA would consider adding automatic recalibration, the recognized benefits of doing so to avoid requiring the user to manually perform the recalibration, and how updating the software in Steber's microprocessor was straightforward and well within the POSITA's skill level. Appx017636 at QA96; Appx017638 at QA104; Appx017649-017650 at QA141; Appx017652-017660 at QA145-152, 155-156, 159; Appx017662-017664 at QA168-175; Appx001754-001755 at 473:3-474:22. Zircon's inventor similarly testified that such work was "simply a matter of re- -- redesigning the code." Appx016891 at 57:10-25 (cited at Appx017656-017657 at QA156). The Commission was free to credit that testimony.

As further substantial evidence, DE336 states that its "self-adjusting" sensor can be used for "any application for which a conventional sensor can be used,"

recognizes the "significant advantage" of omitting user controls, and characterizes the invention as a "great advantage." Appx017333 at ¶¶ [0028], [0035]. That "great" and "significant" advantage is a compelling and express reason for the POSITA to add automatic recalibration to Steber. Appx017649-017652 at QA141-144; Appx017654-017657 at QA152, 156; Appx017659-017660 at QA159; Appx001759-001760 at 478:12-479:13.

Similarly, the Commission cited DE336's statements about its applicability to "conventional sensors" and "any application," finding that "disclosures throughout DE336 teach modifying other sensors to use the disclosed automatic recalibration function." Appx000037 (citing Appx017333 at ¶¶ [0034], [0035]; Appx017649-017650; Appx017628; Appx017654-017655 at QA72, 141, 152). *See also* Appx001756-001760 at 475:18-479:13 (explaining that stud finders were conventional by 2001 and DE336's discussions of manually calibration issues applied to them).

Substantial evidence also supports the Commission's finding that "it is clear Miller is discussing the need for *automatic* recalibration. Absent an *automatic* trigger for recalibration, the user would not know that the initial calibration was erroneous, and recalibration was even needed. This is true whether the device is detecting electrical wires or studs." Appx000039 (citing Appx017653-017654 at QA149) (emphasis in original). The Commission credited Dr. Messner's testimony

regarding the reasons to combine on this issue also. *Id. See also* Appx017620-017621 at QA50; Appx017635 at QA90; Appx017654-017656 at QA150, 155; Appx017662 at QA168-169. Additional evidence showed that stud finder and wire finder circuits like in Steber and Miller were commonly included in the same prior art devices, yet another reason to combine their features. Appx017621-017622 at QA51-54; Appx017653 at QA147-148; Appx017661-017662 at QA163-168; Appx017502-017503 at ¶¶ [0136]-[0152].

Moreover, Sanoner discloses that automatically repeating calibrations was already known <u>in a prior art stud finder</u> and avoided the need for a user to restart the device – which "directly provides even more reason for a POSITA to consider using automated techniques like Miller and DE336." Appx017662-017663 at QA171-175; Appx017502 at ¶¶ [0128]-[0134] and Appx017489 at Fig. 4. That is more substantial evidence supporting the Commission's findings. Appx000033; Appx000035-000036 (citing Appx017662 at QA170-171).

Zircon relies on *InTouch Techs., Inc. v. VGo Commc'ns, Inc.*, 751 F.3d 1327 (Fed. Cir. 2014), but that opinion found non-obviousness because the expert testimony "primarily consisted of conclusory references to [the expert's] belief that one of ordinary skill in the art *could* combine these references, not that they *would* have been motivated to do so." *Id.* at 1352 (emphasis in original). That case is an

unremarkable example of insufficient evidence and does not apply here because, for the reasons discussed, Stanley's evidence is more than sufficient.

e. Substantial Evidence Confirms the Combination Had a Reasonable Expectation of Success

The Commission's finding that a POSITA would have had a reasonable expectation of success is also reviewed for substantial evidence. *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1364 (Fed. Cir. 2015). Substantial evidence supports the Commission's factual determination on this issue. Appx000039.

For example, Dr. Messner explained it is straightforward for a POSITA to reprogram the software in Steber's microprocessor to automatically recalibrate by a simple change from using a signal to "alert the user" to "re-starting the calibration routine again." Appx017656-017657 at QA156. Based on years of teaching experience, Dr. Messner testified that the expertise required to do so was that of a third-year engineering undergraduate, which is well below the POSITA's skill level. Appx001754-001755 at 473:3-474:22. Also, as mentioned, Zircon's own inventor conceded that modification was "simply a matter of [] redesigning the code." Appx016891.

Zircon's Brief at 27-28 repeats much of its argument and expert testimony offered below that DE336 is "a completely different type of sensor" with a different calibration method that would not be used in a stud finder. The

Commission rejected that contention, finding that Dr. Messner explained his position "in detail." Appx000037-000038 (citing Appx017656-017660 at QA156, 159). *See also* Appx000039 (citing Appx003791-003792 and Appx017654 - 017657 at QA151, 155–156). The Commission was free to credit Dr. Messner.

Moreover, Zircon's focus on whether DE336's circuit can be used in Steber's stud finder is legally improper because "[t]he test for obviousness is not whether the features of [DE336] may be bodily incorporated into the structure of [Steber]." *In re Keller*, 642 F.2d 413, 425 (C.C.P.A. 1981). The correct "test is what the combined teachings of the references would have suggested to those of ordinary skill in the art." *Id.* Dr. Messner's testimony applied the correct analysis when explaining that a POSITA would take the idea of automatic recalibration from DE336 and apply it to Steber by modifying Steber's already-existing calibration process to restart automatically, rather than try and add DE336's circuitry "as is" into Steber's stud finder. Appx001751 at 470:6-23 ("The aspect of DE336 I would use is not the hardware that is discussed there. It is the concept of automatically adjusting a calibration value when a certain condition is met."); Appx001751-001755 at 470:24-474:22; Appx017636-017637 at QA96-97; Appx017652-017653 at QA146; Appx017656-017657 at QA156, 159; Appx017672 at QA198. *See also* Appx000033-000034 (quoting Appx017656 at

QA154 that "the concept of recalibrating a sensor is independent of whether the sensor" is moved or stationary).

**3. The Commission's Invalidity Determination Is Legally Sound**

The Commission's obviousness conclusion was also supported by the law. Modifying Steber to automatically recalibrate is exactly "the predictable use of prior art elements according to their established functions" envisioned by *KSR*, 550 U.S. at 417. Indeed, achieving the '662 Patent claims involves merely taking that which was done manually (i.e., pushing a button in Steber) and automating it using a technique already known in the prior art - a classic case of obviousness. *In re Venner*, 262 F.2d 91, 95 (C.C.P.A. 1958) ("[I]t is well settled that it is not 'invention' to broadly provide a mechanical or automatic means to replace manual activity which has accomplished the same result.").

This Court has also previously found automating actions done manually in the prior art to be obvious. *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329-30 (2009) (finding obvious claim that "simply recites repetition of a known procedure until success is achieved."); *Fleming v. Cirrus Design Corp.*, 28 F.4th 1214 (Fed. Cir. 2022) (obvious to program a system to automatically perform flight maneuvers associated with parachute deployment that training manual taught pilots to do manually). Thus, the Commission's conclusion is supported by the law as well as the facts.

### 4. Zircon's Cumulativeness Argument Is Incorrect

Zircon also argues that Steber is "cumulative" of the Heger reference considered during the original prosecution because both disclose manually recalibrated stud finders. Zircon Brief at 19-22 (citing U.S. Patent No. 5,619,128). This is another argument Zircon made unsuccessfully below.

First, there is no prohibition against finding a claim invalid over cumulative prior art; although, there may be an "added burden of overcoming the deference due a qualified governmental agency" when the same prior art is evaluated. *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1340-43 (Fed. Cir. 2018); *Liqwd, Inc. v. L'Oréal USA, Inc.*, 720 F. App'x 623, 631-32 (Fed. Cir. 2018). The clear and convincing standard remains the same regardless of whether the same or similar prior art was considered by the USPTO. *Exmark Mfg. Co.*, 879 F.3d at 1341-42. As discussed above, Stanley met that standard.

Second, Zircon is factually incorrect. While both references generally describe manual recalibration, they are different when considering their relevance to the claim language. The value f1 set during Steber's calibration meets the "calibration value" in the '662 Patent claims, as discussed *supra* at pp. 4-5. In contrast, Zircon's expert conceded on cross-examination that Heger does not have

the claimed "calibration value." Appx002049 at 767:18-23; Appx002132 at 849:1-19. That dispels Zircon's "cumulativeness" argument.

Third, the evidence discussed above showed that modifying Steber to automatically recalibrate would have been easier because it just requires updating Steber's microprocessor software. In contrast, Heger is hardware-based, meaning the same modification "would require physically removing and replacing circuit components, i.e., the circuit would have to be redesigned." Appx017637 at QA97; Appx001752-001754 at 471:21-473:2. Zircon's own inventor confirmed this, testifying that automating recalibration in a microprocessor-based stud finder is "simply a matter of . . . redesigning the code," but with a hardware-based design "it might not be possible to do it at all." Appx016891 at 57:10-23. That software versus hardware difference was illustrated in Appx017989 (discussed at Appx017637-017638 at QA102-103; Appx001752-001754 at 471:21-473:2):






Thus, substantial evidence justifies the Commission not accepting Zircon's cumulativeness argument.

### 5. Zircon's Argument for Claim 17 Misreads the Commission's Opinion and Fails to Show Reversible Error

Zircon's argument at pages 31-33 implies that because the Commission "affirm[ed] the ID's finding that claim 17 is obvious" (Appx000030) it also adopted the ID's claim construction that claim 17 is not limited to automatic recalibration and covers manual recalibration.

The claim construction does not need to be resolved because Zircon does not explain how the alleged error would have changed the outcome, as required to be more than "harmless error" and thus reversible. 28 U.S.C. § 2111; *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1574 (Fed. Cir. 1984) ("[A]ppellant must not only show error in reasoning, but error in result.").

Zircon could not make such an argument because claim 17 is invalid under either interpretation. If claim 17 includes manual recalibration, as the ID interpreted it, then none of Zircon's arguments in its brief for the inventiveness of automatic recalibration could plausibly apply to claim 17 and it fails outright. Conversely, if claim 17 is limited to automatic recalibration, the Commission found automatic calibration obvious anyways and it mentioned claim 17 in its conclusion, as discussed above. Appx000039. *See also* Appx0017645 at QA126-128. Zircon does not argue that there is anything different about claim 17 that

makes it deserving of a different outcome than claim 1, such as by arguing some other limitation in claim 17 differentiating it from the prior art or challenging the findings below in that regard. Appx003794-003795. The invalidity determination for claim 17 was therefore correct under any interpretation.

Even if the Court accepted Zircon's argument for claim 17, the proper remedy is not reversal, but instead remand so the Commission can apply that construction to the prior art. *See*, *e.g.*, *Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329, 1330 (Fed. Cir. 2011).

### D. The Determination That the Asserted '771 and '185 Patent Claims Are Not Infringed and/or Are Invalid Should Be Affirmed

#### 1. Substantial Evidence Supports the Finding That the '771 Patent Claims 1, 5, 9, and 10 and the '185 Patent Claims 1, 2, 5-11, and 13-15 Are Invalid

Zircon's validity arguments are directed solely to independent claim 1 of both the '771 and '185 Patents and independent claim 14 of the '185 Patent, and specifically the "axis of rotation" limitation. No separate arguments were presented for the dependent claims or other issues. Thus, all these claims stand and fall together based on the "axis of rotation"[9] limitation. *See, e.g., In re McDaniel*, 293 F.3d 1379, 1383-84 (Fed. Cir. 2002).

##### a. The Zircon 1 Meets the "Axis of Rotation" Limitation

[9] Claims 14-15 of the '185 Patent are included here with the other non-means claims based on the stipulation that the "gripping means" term was not subject to §112(f) interpretation, as discussed *supra* at pp. 2 and 7-8.

Zircon does not argue for a different construction of the "axis of rotation." That leaves only the question of whether substantial evidence supports the Commission's factual finding that the Zircon 1 meets that limitation. *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1362 (Fed. Cir. 1999) ("Whether a prior art reference anticipates a patent claim is a question of fact.").

Zircon, however, does not explain why the Zircon 1 lacks the aspect of the construction requiring "an imaginary line between two points about which a body is allowed to rotate[.]" Appx012091-012095; Appx000042-000043. Substantial evidence confirms that the "imaginary line" required by the construction runs between the Zircon 1's finger holds and that the Zircon 1 can be rotated between a finger and thumb, as explained by Stanley's expert. Appx017813- 017814 at QA114-115; Appx018041 (below, discussed at *id.*). *See also* Appx017809-01710 at QA96; Appx017815-017818 at QA116-126; Appx017841-017843 at QA224-225; Appx018053 (similar demonstrative for '185 Patent).




Nor does Zircon explain why the Zircon 1 does not meet the aspect of the “axis of rotation” construction that “exclud[es] finger holds that are designed to resist rotational movement.” Appx012091-012095; Appx000042-000043. Again, substantial evidence, including detailed explanation from Stanley’s expert, shows this requirement was met. Appx017813-017814 at QA114-115; Appx017815-017818 at QA116-126; Appx017841-017843 at QA224-225. Zircon also omits its concession relied upon by the Commission that “there is no affirmative evidence supporting” a finding that the lateral ridge on the Zircon 1 prevents rotation. Appx004390 (cited Appx000048-000049).

To the extent Zircon’s argument is over the “finger holds” limitation specifically, Zircon does explain why the Zircon 1 does not meet the construction

for that term either, which is simply "features for fingers to hold." Appx001207-001209; Appx003821; Appx003861. The evidence showed the depressed, concave recesses on the Zircon 1's sides are "features for fingers to hold," and thus it has the "three-dimensional concave finger holds positioned at opposite sides" in the '771 Patent's claim 1 and the "only two depressed finger holds positioned at opposite sides" in the '185 Patent's claims 1 and 14. Appx003822; Appx003861; Appx017813-017814 at QA115; Appx017841-017843 at QA224-225. Zircon even relies on images showing the user's fingers holding the Zircon 1 by those recesses. Zircon Brief at 36-37. Nothing more is required to be "features for fingers to hold." Thus, substantial evidence also supports the finding that the Zircon 1 has the claimed "finger holds."

Zircon instead contends that the Commission should not have credited the testimony of Stanley's expert, Mr. Van Deursen. Zircon Brief at 37. The Commission was free to give less weight to Zircon's expert and more weight to Mr. Van Deursen, who has over 50 years of experience in product design and ergonomics for hand-held products, including stud finders, two of which won awards in 2000 and 2003. Appx000048 (citing Van Deursen testimony, Appx017813-17814 at QA115 and Appx001842-001843 at 561:4-562:1); Appx017791-17792 at QA3-10; Appx018089-018091. That is not a determination

decided anew on appeal. *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1263 (Fed. Cir. 2013).

Zircon's counter-arguments fail to dispute the evidence cited above, and instead are based on features not required by the disputed claim language or the Commission's constructions.

For example, Zircon argues the Zircon 1 "did not have 'grips'" implying the claim requires multiple grips. Zircon Brief at 34 (emphasis added); *id*. at 35 ("lack of 'grips'"; "Zircon 1 could not have grips"; "a key element of the grips"); 36, and 42. However, claim 1 of both the '771 and '185 Patents recites "a grip" - singular, and claim 14 of the '185 Patent recites "gripping means" with "only two finger holds." Zircon's attempt to add a plural "grips" requirement is therefore incorrect.

Zircon also argues that "the Zircon 1 has no means to prevent a finger or thumb from slipping off and contacting the wall during use, a key element of the grips and pivot point for the designs claimed in the '771 and '185 patents." Zircon Brief at 35; *id.* at 37 (Zircon 1 "did nothing to stop a user's finger from going all the way to a wall.") and 38 ("[R]otation is impossible given the foregoing lack of any means to prevent the user's fingers from touching the wall."). However, preventing contact with the wall is not a requirement of the "axis of rotation" or the "grip"/ "gripping means" elements, which simply call for finger holds that are "three-dimensional concave" ('771 Patent) or "depressed" ('185 Patent). The

Commission's interpretation of "axis of rotation" also does not contain a "preventing wall contact" requirement, nor does the interpretation of "finger holds." Zircon's contention that preventing "contacting the wall" is "a key element of the grips and pivot point" (Zircon Brief at 35) is irrelevant. *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988).

The '771 and '185 Patents do have a feature that prevents finger contact with the wall, but that is a different element – a running board, shown at Figs. 3A and 3B. Appx000139; Appx000146 at 4:33-45 ("The grip provides an axis of rotation 310 and also provides the function of a running board by distancing the thumb and finger from the surface at points 302 and 322.") (emphasis added); Appx000153; Appx000160 at 4:48-56.




FIG. 3A




FIG. 3B

The claims also recite the running board as a separate limitation, which "isolates," "distances" or "inhibits," or "provides a barrier" as between the thumb/finger and the wall ("the target surface"). Appx000161-000162 ('185

Patent, claims 5-9, 14, and 22).[10] Well established claim interpretation law confirms that the "preventing wall contact" function of the running board should not be read into the "grip"/ "gripping means" or "finger holds" that provide an "axis of rotation." *Littelfuse, Inc. v. Mersen USA EP Corp.*, 29 F.4th 1376, 1380 (Fed. Cir. 2022) (quoting *Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.*, 520 F.3d 1358, 1362 (Fed. Cir. 2008)). Therefore, the "preventing wall contact" function is irrelevant to whether those limitations are met by the Zircon 1.

Although Zircon cites its expert's testimony in its "preventing wall contact" argument, the record shows he also understood preventing wall contact as the function of the running board, consistent with Stanley's position. Appx014511 at QA76 (The Zircon 1 "does not feature any running board means to distance, or prevent the user's fingers from contacting, the surface upon which the tool is being used.") (emphasis added); Appx014519 at QA108; Appx014522 at QA125. *See also* Zircon Brief at 36 (photo from Mr. Delman showing thumb/finger contacting wall with annotation attributing that to "lack of any running board").

Zircon's counter-arguments based on unclaimed requirements should therefore be rejected.

---

[10] The running board was taught by a different reference, U.K. Application GB2188432 (Appx017028-017042), which the Commission relied on to find claims with that feature obvious. Appx000054-000055. The obviousness of the running board limitation is not raised on appeal.

b. Zircon's Cumulativeness Argument Is Incorrect

Zircon argues that the Zircon 1 is cumulative of the prior art considered during prosecution of the '771 and '185 Patents. Zircon Brief at 39-41. Zircon is legally incorrect for the same reasons discussed for the '662 Patent. *See*, *supra*, pp. 50-51.

Notably, Zircon does not contend that the Zircon 1 was cited in an Information Disclosure Statement or otherwise disclosed to the Examiner during the '771 and 185 Patents' prosecutions. Instead, Zircon's argues that the "basic designs of the Zircon 1 were before the patent office in the provisional application" to which those patents claim priority, implying that the Examiner for the non-provisional utility applications must have considered them during prosecution. Zircon Brief at 39 (emphasis added).

Zircon cites no support for its proposition, which is contradicted by the USPTO's practice. MPEP § 903.08(b) (June 2020) ("The supervisory patent examiner normally assigns the application to an examiner. Provisional applications are not classified or assigned since they are not examined.") (emphasis added). Absent a priority dispute, which did not happen, there is no need for an Examiner to substantively consider priority applications. *Cf. PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008); *Martin v. United States*, 99 Fed.

Cl. 627, 632–633 (2011) ("Provisional applications are not examined on their merits.").

To support its proposition before the ALJ, Zircon relied on its technical expert, Mr. Delman, who testified the cited drawings were evidence that "Zircon disclosed prior art to the patent examiner, [sic] in the provisional patent application that led to the issuance of the '771 and '185 patents[.]" Appx014527 at QA147. Mr. Delman is not a USPTO procedure expert. *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1377 (Fed. Cir. 2022); Appx001891; Appx002036. On appeal, Zircon now attempts to rely on Stanley's expert for this proposition, but he is not an USPTO procedure expert either. Zircon Brief at 39; Appx001844-001847. Moreover, Mr. Van Deursen did not testify that any of the prior art designs included in the provisional application looked like the Zircon 1. He said the opposite. Appx001823 at 542:2-14 ("The Zircon 1 design? I don't see anything that looks like the Zircon 1."), Appx001824 at 543:9-18.

Substantial evidence therefore supports the Commission not accepting Zircon's "cumulativeness" argument.

c. If Invalidity Over the Zircon 1 Is Reversed, the Infringement Finding Should Be Remanded

Evident from the competing decisions below detailed by Zircon (Brief at 34), the infringement and invalidity issues turned on whether the lateral ridge of the grip of both the Zircon 1 and the accused products "prevents rotation," and

both the Commission and the ALJ treated the claims consistently for both issues. Specifically, the ALJ found no infringement, but also no invalidity, for claim 1 of both patents and the '185 Patent's claim 14 because he found that neither the accused products nor the Zircon 1 met the "axis of rotation" limitation due to the presence of the ridge that engaged the fingers to prevent rotation. Appx003808-003809; Appx003811-003812; Appx003822-003823; Appx003847; Appx003851; Appx003861. The Commission came to the opposite conclusion, finding the claims infringed but invalid, based on a contrary view that the ridges on both did not impact the "axis of rotation" limitation. Appx000046-000049; Appx000050; Appx000053-000054. Thus, if this Court reverses on invalidity, then the infringement issue for all claims (which all require an "axis of rotation") should be remanded, allowing the Commission to reconsider the accused products in view of this Court's reasoning for differentiating the claims from the Zircon 1 and giving Stanley an opportunity to raise any non-infringement positions based on that reasoning. This is a simple matter of fairness to ensure the claims are treated the same for both infringement and validity and would follow both the Commission's and the ALJ's opinions that sought to maintain such consistency.

### 2. The Commission Was Correct That Zircon Did Not Prove a Violation of Claims 13-15 of the ’771 Patent

a. The Non-Infringement Finding Was Correct

The Commission correctly found independent claim 13 of the ’771 Patent and its dependent claims 14-15 not infringed. Claim 13 recites “gripping means for gripping and for providing an axis of rotation,” which the parties agreed is subject to interpretation under §112(f). Appx000148, Appx016269. The Commission affirmed the ID’s non-infringement finding, which stated that “Mr. Delman performed no comparison between the grips of the Accused Stanley Products and the finger holds disclosed in the specification.” Appx003812; Appx000047.

Zircon responds by saying it offered “the same evidence” for claim 13’s “gripping means” that it did for the non-means “concave finger holds” in claim 1. Zircon Brief at 42 (citing Appx0014451 at QA90[11]). Zircon then states “[i]t is unclear what further analysis would be needed for such a simple element.” *Id.* at 43. The ALJ, however, could not have been clearer: Zircon needed to provide a “comparison between the grips of the Accused Stanley Products and the finger holds disclosed in the specification.” Appx003812 (emphasis added). That is required under §112(f) because proof of infringement requires not just meeting the functional language of the claim element, but the accused feature must also be

[11] The other citations related to claim 14 of the ’185 Patent, in which the “gripping means” is not subject to a §112(f) interpretation. Those are inapposite.

identical or structurally equivalent to the corresponding structure disclosed in the specification. *Cytologix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1178 (Fed. Cir. 2005).

The agreed construction identified that corresponding structure as "a pair of concave finger holds positioned at opposite sides of the grip as disclosed in the specification and equivalents thereto at '771 pat. col. 1, ll. 48-53; col. 2, ll. 49-52; col. 3, ll. 33-65; col. 5, ll. 9-18, 44-52, Figs. 2A, 2B, 6A, 6B, 7, 8." Appx016269. Zircon failed to present evidence comparing that corresponding structure to the accused products. Instead, Zircon's expert simply restated his earlier position "with respect to claim 1" of what constituted the alleged "gripping means" and the "axis of rotation" in the accused products. Appx014451 at QA90. Therefore, substantial evidence supports the finding that no such comparison was made.

b. If Non-Infringement Is Reversed for the '771 Patent Claims 13-15, Then Validity Should Be Also

Similar to the non-infringement finding for claim 13, on the invalidity issue the Commission adopted the ALJ's reasoning at Appx003824 that Stanley's evidence did not satisfy claim 13's "gripping means," despite finding the Zircon 1 met the "three-dimensional concave finger holds" limitation in the '771 Patent's claim 1, as discussed above. Appx000049. The Commission reasoned that the ID found the Zircon 1 did not anticipate claim 13 based on "additional grounds" besides the lack of the claimed "axis of rotation." Appx000049.

But the additional grounds were based on comparison between Zircon 1 and the "gripping means" disclosed in the specification. Appx003824 (finding it "unclear" that the "gripping means" limitation is anticipated). The ALJ's finding simply mirrors the finding that Zircon failed to prove infringement of claim 13's "gripping means" by not comparing the accused products to the corresponding structure in the specification. Appx003811-003812. That is, the Commission affirmed the ALJ's decisions of both non-infringement and no invalidity of claim 13, which faulted both parties for the lack of comparison to the corresponding structure. *Compare* Appx003812 *with* Appx003824.

Zircon's appeal would treat claim 13 differently for infringement and invalidity purposes. However, it is axiomatic that a claim cannot be treated one way for infringement, but another way to preserve validity. *Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001). Applying this principle, if the Court accepts Zircon's argument that its evidence for the '771 Patent's claim 1 is also sufficient to meet claim 13 for infringement, then the Court should likewise treat Stanley's evidence that the Zircon 1 meets claim 1 in the same manner for invalidity and conclude the Zircon 1 also meets claim 13. This is a simple matter of fairness to ensure that claim 13 receives the same treatment for both purposes. The same applies to claims 14-15 because they were found valid based solely on no anticipation of claim 13. Appx003824.

The above reasoning for reversing the no invalidity finding for the ’771 Patent’s claims 13-15 is contingent on the Court’s reversal of the non-infringement finding, and thus an independent reason for affirming the Commission’s finding of no violation for those claims.[12] Remand is unnecessary because this issue turns solely on the legal principle that claim 13 should be treated the same for both infringement and invalidity. Alternatively, the Court should remand the invalidity issue so the Commission can apply claims 13-15 to the Zircon 1 in a manner consistent with any reasoning the Court provides if its reverses on non-infringement.

### 3. Substantial Evidence Supports the Determination That Stanley Did Not Induce Infringement of the ’771 and’185 Patents’ Method Claims

The asserted ’771 and ’185 Patent method claims require positioning the device on a wall (“a target surface”) and then “rotating the hand tool about the axis of rotation relative to the finger and thumb” or “rotating the stud finder about the axis of rotation relative to the thumb and the finger.” Appx000148 (claim 17), Appx000162 (claim 17). The finding that Stanley did not induce infringement of

---

[12] Stanley preserved this issue. Appx004046; Appx004102-004104 (contingently petitioning for review on invalidity if infringement were reversed); Appx002278-002279 (Post-Hearing Brief). *See, e.g., Bailey v. Dart Container Corp. of Mich.*, 292 F.3d 1360, 1362 (Fed. Cir. 2002).

the method claims is also reviewed for substantial evidence. *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 976 F.3d 1347, 1352, 1356 (Fed. Cir. 2020).

Zircon lists a number of evidentiary citations, selecting as its best candidate a screenshot from an alleged YouTube video:

| Stanley Stud Sensor 300 CX-543C at 00:02 | Stanley Stud Sensor 300 CX-543C at 00:37 | Stanley Stud Sensor 300 CX-543C at 00:56 |
|---|---|---|










Zircon contends video this "promote[s] the accused products as capable of being rotated about the axis of rotation relative to a finger and thumb." Zircon's Brief at 44. However, Zircon's expert said the opposite:

> Q: Okay. So you – you agree that in – in reviewing the Stanley videos, they do not show the hands or the tool pivoting relative to one another, correct?
>
> A: I don't believe that the Stanley videos do.

Appx001520 at 240:16-19.

That is substantial evidence supporting the finding that "none of these videos show a user rotating the tool after positioning it against a wall." Appx003815; Appx000047.

Zircon also incorrectly presents the issue as whether the accused products are "<u>capable</u>" of being rotated about an axis. Any hand-held object, including prior

art stud finders like the Zircon 1, can be rotated at different angles if the user chooses to just hold it between the thumb/forefinger. Instead, the issue is whether Stanley induced "rotational" use. *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1059 (Fed. Cir. 2010).

Substantial evidence supports the ID's finding, affirmed by the Commission, that "Zircon has not identified any explicit instructions provided by Respondents for rotating the Accused Stanley Products." Appx003814. Stanley's instructions tell the user to move the accused products side to side on the wall, such that there is no "rotating" of the stud finder about the finger/thumb as claimed. Appx017891-017892 at QA81-82; Appx017901-017902 at QA121-123. An example of Stanley's instructions is shown below. Appx018071 (showing Appx007006, with highlights).



Zircon never explains how those instructions tell a user to "rotat[e]" the device as claimed,[13] or why Stanley's evidence cited above explaining that they do not was insufficient.

Zircon also fails to address the impact that a substantial non-infringing use has on establishing induced infringement, namely that it elevates the proof needed beyond the characteristics of the product and requires evidence showing active encouragement, such as "statements or actions directed to promoting infringement." *AstraZeneca LP*, 633 F.3d at 1059. Even if the accused products are "capable" of being used in an infringing manner as Zircon alleges, that is insufficient. *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1329 (Fed. Cir. 2009).

The non-infringing uses of the accused products are plainly substantial. The non-infringing side-to-side use to find studs, shown above, is substantial. Likewise, the user could grip the device with all his/her fingers and flex his/her wrist, instead of rotating or pivoting the device between the thumb and forefinger as claimed. Appx017884-017885 at QA61-62; Appx017891-017892 at QA81-82. In fact, during prosecution of the '185 Patent, Zircon argued over the Krantz reference (Appx017442-017446) based on "**an axis of rotation via a hand or wrist**

---

[13] Zircon would be hard-pressed to do so, as page 37 of its brief included similar images from the Zircon 1 instruction manual as alleged evidence the Zircon 1 is not rotated.

**separate from Krantz' hand-held sensor."** Appx000668 (bold in original). Yet the non-infringing use of a flexed wrist is exactly what Zircon included in its brief at pg. 44 (red highlighting added):

| Stanley Stud Sensor 300 CX-543C at 00:02 | Stanley Stud Sensor 300 CX-543C at 00:37 |
| --- | --- |
|   |   |

These non-infringing uses further support the Commission's rejection of Zircon's inducement arguments because Zircon did not cite any "statements or actions directed to promoting infringement," i.e., "rotating" of the stud finder. *AstraZeneca*, 633 F.3d at 1059.

Zircon's argument also fails because it does not challenge the ID's separate finding, affirmed by the Commission, of no direct infringement: "Zircon failed to present evidence showing that anyone other than Zircon's expert (and his associates) ever actually performed the methods of claim 22 (and unasserted claim 17 from which it depends)." Appx000047; Appx000052. Failure to argue that separate reason for non-infringement is fatal. *Collins v. N. Telecom Ltd.*, 216 F.3d 1042, 1049 (Fed. Cir. 2000).

The Commission's finding of no induced infringement for the '771 and '185 Patents' method claims should therefore be affirmed.

### E. If the Court Decides Reversal Is Warranted, Remand for Consideration of the Remaining Issues on Which the Commission Took No Position Is Necessary

Zircon requests reversal for all issues and for this Court to "remand this case to the ITC to implement an exclusion order." Zircon Brief at 64. The Commission, however, took no position on numerous issues raised in the parties' Petitions for Review per 19 C.F.R. § 210.45(c). Thus, the Commission made no decision on those issues, and they cannot be raised on appeal. *Beloit Corp. v. Valmet Oy*, 742 F.2d 1421, 1423-24 (Fed. Cir. 1984). *See also Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 700 (Fed. Cir. 1998).

Therefore, if the Court decides to reverse on the issues of domestic industry and liability with respect to at least one patent (i.e., such that there is a non-moot issue remaining), the proper remedy is remand for consideration of those issues on which the Commission took no position that remain relevant. *Beloit*, 742 F.2d at 1424. Those issues include: (a) the ID's additional findings that Zircon failed to satisfy the economic prong of the domestic industry requirement (Appx000059-000065, Appx003875-003885); (b) Stanley's arguments of no intent to induce infringement of the '662 Patent method claims (Appx000029); (d) Stanley's additional prior art for invalidity of the '771 and '185 Patents (Appx000054); and

(e) Stanley's arguments on the technical prong of the domestic industry requirement (Appx000029-000030). Other issues may also warrant remand, as discussed *supra* at pp. 52-53, 61-62, and 64-66.

## VIII. CONCLUSION

Accordingly, the Commission's determination of no violation of 19 U.S.C. § 1337 should be affirmed. If any issues are reversed, the proceeding should be remanded for consideration of the unresolved issues identified herein.

Dated: November 22, 2022

*<u>/s/ Bryan P. Collins</u>*
Bryan P. Collins
Jack S. Barufka
Robert M. Fuhrer
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, Virginia 22102-4859
(703) 770-7900
bryan.collins@pillsburylaw.com
jack.barufka@pillsburylaw.com
robert.fuhrer@pillsburylaw.com

Theresa A. Roozen
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1200 Seventeenth St NW
Washington, DC 20036
(202) 663-8000
theresa.roozen@pillsburylaw.com

Kecia J. Reynolds
PAUL HASTINGS LLP
2050 M Street NW,
Washington, DC 20036
(202) 551-1700
keciareynolds@paulhastings.com
*Attorneys for Intervenors,*
*Stanley Black & Decker, Inc. and Black & Decker (U.S.) Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 22, 2022, true and correct copies of RESPONSE BRIEF OF INTERVENORS STANLEY BLACK & DECKER, INC. & BLACK & DECKER (U.S.) INC. were electronically filed with the Clerk of Court using the CM/ECF System, which will serve notice of such filing to all registered counsel of record.

November 22, 2022

/s/ *Bryan P. Collins*
Bryan P. Collins

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7)(C), Federal Rules of Appellate Procedure, and Federal Circuit Rule 32(b), I hereby certify that the foregoing RESPONSE BRIEF OF INTERVENORS STANLEY BLACK & DECKER, INC. & BLACK & DECKER (U.S.) INC. is proportionally spaced, has a Times New Roman typeface of 14 points or more, and contains 13,987 words, including headings, footnotes, and quotations, but excluding the table of contents, table of authorities, certificate of interest, statement of related cases, addendum of statutes, this certificate, and the certificate of service. In making this certification, I have relied on the word count function of Microsoft Word, the word-processing system used to prepare the brief.

November 22, 2022

/s/ *Bryan P. Collins*

Bryan P. Collins
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102-4859

*Attorney for Intervenors*
*Stanley Black & Decker, Inc. and*
*Black & Decker (U.S.) Inc.*