**2022-1649**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

**ZIRCON CORP.,**
*Appellant,*

v.

**INTERNATIONAL TRADE COMMISSION,**
*Appellee,*

**STANLEY BLACK & DECKER, INC., BLACK & DECKER (U.S.), INC.**
*Intervenors*

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-1221

---

**BRIEF OF APPELLEE**
**INTERNATIONAL TRADE COMMISSION**

WAYNE W. HERRINGTON
Assistant General Counsel
Telephone (202) 205-3090

SIDNEY A. ROSENZWEIG
Acting Assistant General Counsel
Telephone (202) 708-2532

BENJAMIN S. RICHARDS
Attorney Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone (202) 708-5453

Dated: November 22, 2022

# PATENT CLAIMS

## U.S. Patent No. 6,989,662

1. A method of recalibrating a stud sensing device for finding a location of a stud positioned behind a surface, the method comprising the acts of:

holding the stud sensing device at a first location on the surface;

placing the stud sensing device in an [sic] calibration mode;

sensing a first density at the first location in the calibration mode;

setting a calibration value based on the first sensed density;

placing the stud sensing device in an operating mode;

moving the stud sensing device to a second location on the surface;

sensing a second density at the second location;

setting a second density value based on the second sensed density;

the stud sensing device determining if it was calibrated over or near a stud; and

the stud sensing device recalibrating itself if it determined that the stud sensing device was calibrated over or near the stud.

**U.S. Patent No. 8,604,771**

1. A hand tool for sensing a measurement behind a target surface, the hand tool comprising:

a housing;

a sensor coupled in the housing; and

a grip having a pair of three-dimensional concave finger holds positioned at opposite sides of the grip to provide an axis of rotation.

* * *

13. A hand tool for sensing a measurement behind a target surface, the hand tool comprising:

housing means for providing a housing to the hand tool;

sensing means for sensing a hidden characteristic, wherein the sensing means is coupled in the housing means; and

gripping means for gripping and for providing an axis of rotation.

* * *

17. A method for using a hand tool against target surfaces, wherein the hand tool comprises a grip having a pair of three-dimensional concave finger holds positioned on the grip to provide an axis of rotation, the method comprising:

providing the hand tool;

holding the hand tool with a thumb at a first three-dimensional concave finger hold of the pair of three-dimensional concave finger holds and with a finger at a second three-dimensional concave finger hold of the pair of three-dimensional concave finger holds;

positioning the hand tool against a first target surface; and

rotating the hand tool about the axis of rotation relative to the finger and thumb.

# TABLE OF CONTENTS

PATENT CLAIMS ..... ii

TABLE OF AUTHORITIES ..... viii

STATEMENT OF RELATED CASES ..... xii

STATEMENT OF THE ISSUES ..... 1

STATEMENT OF THE CASE ..... 4

I. The Patents at Issue ..... 4

A. The ’662 Patent: Automating Recalibration in Electronic Stud Finders ..... 4

B. The ’771 and ’185 Patents: Stud Finder Pivot Grips ..... 8

II. The Products at Issue ..... 11

A. Stanley Accused Products ..... 11

B. Zircon’s Domestic Industry Products ..... 12

III. The Commission’s Findings Below ..... 13

A. Findings on Domestic Industry ..... 14

B. Findings on the ’662, ’771, and ’185 Patents ..... 15

SUMMARY OF THE ARGUMENT ..... 18

ARGUMENT ..... 21

I. Standard of Review ..... 21

II. Zircon Failed to Establish a Violation of Section 337 With Respect to the ’662, ’771, or ’185 Patents Because It Failed to Establish a Domestic Industry in Any of Those Patents. ..... 22

## TABLE OF CONTENTS (cont'd)


A. Zircon Cannot Establish Domestic Industries Related to the Articles Protected by Its Patents by Aggregating Its Investments Across All of Its Patents Where Different Articles Are Protected by Each Patent. ....................23

1. The Commission's Finding that Zircon Did Not Show a Domestic Industry Exists Is Supported by Substantial Evidence. ................23

2. Zircon Fails to Show that the Commission's Domestic Industry Findings Lack Substantial Evidence Support. ....................28

B. Zircon Cannot Establish a Domestic Industry Related to Articles Protected by the '662 Patent Based on Investments in the Simon Chip Because It Failed to Provide Reliable Evidence Quantifying Those Investments. ....................33

III. Zircon Failed to Establish a Violation of Section 337 With Respect to the '662 Patent Because All of the Asserted Claims of the '662 Patent Would Have Been Obvious to an Ordinary Artisan. ....................36

A. The Commission's Finding that Claims 1, 6, 9, 12, 13, 15, and 16 of the '662 Patent Would Have Been Obvious to an Ordinary Artisan is Legally Correct and Supported by Substantial Evidence. ....................36

1. Substantial Evidence Supports the Commission's Finding that an Ordinary Artisan Would Have Been Motivated to Modify Steber with Automatic Recalibration. ...............37

2. Zircon Fails to Demonstrate Legal Error or a Lack of Substantial Evidence with Respect to the Commission's Obviousness Findings. ....................44

**TABLE OF CONTENTS (cont'd)**


B. The Commission's Finding that Claim 17 Would Have Been Obvious to an Ordinary Artisan is Legally Correct and Supported by Substantial Evidence. ........................................................ 49

IV. Zircon Failed to Establish a Violation of Section 337 with Respect to the '771 and '185 Patents Because Each Asserted Claim of the '771 and '185 Patents Is Either Invalid or Not Infringed. ................................ 51

A. The Commission's Findings that Claims 1, 5, 9, and 10 of the '771 Patent and Claims 1 and 2 of the '185 Patent Are Anticipated by the Zircon 1, and that that Claims 5-11 and 13-15 of the '185 Patent Are Obvious Over the Zircon 1 with GB432 or Krantz '430, Are Supported by Substantial Evidence. ................................................................ 52

B. Zircon Fails to Demonstrate Legal Error or a Lack of Substantial Evidence with Respect to the Commission's Findings that Claims 1, 5, 9, and 10 of the '771 Patent and Claims 1, 2, 5-11, and 13-15 of the '185 Patent Are Anticipated or Obvious. ......................................................... 55

1. The Claimed Finger Holds Require Neither the Ability to Separate the User's Fingers from the Wall Nor a Pivot Point. ...................... 56

2. Finger Holds Like the Zircon 1's Were Not Before the USPTO During Prosecution .................. 58

C. The Commission's Finding that Zircon Failed to Establish Infringement of Claims 13-15 of the '771 Patent Is Supported by Substantial Evidence. ........................................................................ 62

**TABLE OF CONTENTS (cont'd)**

D. The Commission's Finding that Zircon Failed to Establish Infringement of Claim 22 of the '771 Patent and Claims 17 and 20-22 of the '185 Patent Is Supported by Substantial Evidence. ..................65

CONCLUSION ..........................................................................................69

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abbott Labs. v. Syntron Bioresearch, Inc.*,
334 F.3d 1343 (Fed. Cir. 2003) ....................46, 59

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
501 F.3d 1307 (Fed. Cir. 2007) ....................69

*Alloc, Inc. v. ITC*,
342 F.3d 1361 (Fed. Cir. 2003) ....................22

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
725 F.2d 1350 (Fed. Cir. 1984) ....................46, 59

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) ....................65

*Baran v. Med. Device Techs., Inc.*,
616 F.3d 1309 (Fed. Cir. 2010) ....................64

*In re Bigio*,
381 F.3d 1320 (Fed. Cir. 2004) ....................42

*Comcast Corp. v. ITC*,
951 F.3d 1301 (Fed. Cir. 2020) ....................21

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
363 F.3d 1263 (Fed. Cir. 2004) ....................69

*Hambsch v. Dep't of Treas.*,
796 F.2d 430 (Fed. Cir. 1986) ....................36

*Honeywell Int'l, Inc. v. ITC*,
341 F.3d 1332 (Fed. Cir. 2003) ....................21

*Hornseth v. Dep't of the Navy*,
916 F.3d 1369 (Fed. Cir. 2019) ....................36

*Hyosung TNS Inc. v. ITC*,
926 F.3d 1353 (Fed. Cir. 2019) ....................29

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)** **Page(s)**

*InterDigital Commc'ns, LLC v. ITC*,
707 F.3d 1295 (Fed. Cir. 2013) ....................24, 30

*Jazz Pharms., Inc. v. Amneal Pharms., LLC*,
895 F.3d 1347 (Fed. Cir. 2018) ....................22

*John Mezzalingua Assocs., Inc. v. ITC*,
660 F.3d 1322 (Fed. Cir. 2011) ....................21

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................43

*Lelo Inc. v. ITC*,
786 F.3d 879 (Fed. Cir. 2015) ....................26

*Microsoft Corp. v. Biscotti, Inc.*,
878 F.3d 1052 (Fed. Cir. 2017) ....................22

*Motorola Mobility, LLC v. ITC*,
737 F.3d 1345 (Fed. Cir. 2013) ....................21, 30

*Regents of Univ. of Cal. v. Broad Inst., Inc.*,
903 F.3d 1286 (Fed. Cir. 2018) ....................49

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ....................33

*Spansion, Inc. v. ITC*,
629 F.3d 1331 (Fed. Cir. 2010) ....................21

*SRAM Corp. v. AD-II Eng'g, Inc.*,
465 F.3d 1351 (Fed. Cir. 2006) ....................44, 45

*Tex. Instruments Inc. v. USITC*,
871 F.2d 1054 (Fed. Cir. 1989) ....................31

*Thorner v. Sony Comput. Ent. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ....................51

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)** **Page(s)**

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
529 U.S. 765 (2000) ....................65

**Statutes**

5 U.S.C. § 706 ....................21

19 U.S.C. § 1337 ....................*passim*

19 U.S.C. § 1337(a)(1)(B) ....................23

19 U.S.C. § 1337(a)(2) ....................1, 11, 14, 23, 27

19 U.S.C. § 1337(a)(3) ....................1, 11, 23, 24, 25, 26, 28

35 U.S.C. § 112, ¶ 6 (2006) ....................3, 62

35 U.S.C. § 282 ....................44

**Commission Administrative Cases**

*Certain Audio Digital-to-Analog Converters and Products Containing Same*, Inv. No. 337-TA-499, Final Initial Determ., 2004 WL 3121325 (Nov. 15, 2004) ....................26, 27

*Certain Automated Teller Machines, ATM Products, Components Thereof, and Products Containing the Same*, Inv. No. 337-TA-972, Initial Determ., 2016 WL 11599340 (Nov. 30, 2016) ....................29

*Certain Dynamic Random Access Memories* ("*DRAMs*"), Inv. No. 337-TA-242, Comm'n Op., 1987 WL 450856 (Sep. 21, 1987) ....................31, 32

*Certain Electronic Imaging Devices*, Inv. No. 337-TA-850, Comm'n Op., 2018 WL 11201935 (April 21, 2014) ....................26, 27, 30

*Certain Ground Fault Circuit Interrupters*, Inv. No. 337-TA-739, Comm'n Op., 2012 WL2394435 (June 8, 2012) ....................24, 31

## TABLE OF AUTHORITIES (cont'd)

**Commission Administrative Cases (cont'd)** **Page(s)**

*Certain High-Density Fiber Optic Equipment and Components Thereof*, Inv. No. 337-TA-1194, Comm'n Op., 2021 WL 3809088 (Aug. 23, 2021) ....................24

*Certain Integrated Circuit Chips*, Inv. No. 337-TA-859, Comm'n Op., 2014 WL 12796437 (Aug. 22, 2014)....................31

*Certain Laser Bar Code Scanners and Scan Engines, Components Thereof and Products Containing Same*, Inv. No. 337-TA-551, Order No. 25, 2006 WL 2222926 (July 17, 2006) ....................31, 32

*Certain LED Lighting Devices, LED Power Supplies, and Components Thereof*, Inv. No. 337-TA-1081, Comm'n Op., 2019 WL 7423547 (July 23, 2019) ....................35

*Certain Solid State Storage Drives, Stacked Electronics Components, and Products Containing Same*, Inv. No. 337-TA-1097, Comm'n Op., 2018 WL 4300500 (June 29, 2018) ....................35

*Certain Television Sets, Television Receivers, Television Tuners, and Components Thereof*, Inv. No. 337-TA-910, Comm'n. Op., 2015 WL 6755093 (Oct. 30, 2015)....................29, 30

*Certain Variable Speed Wind Turbines and Components Thereof*, Inv. No. 337-TA-376, Comm'n Op., 1996 WL 1056330 (Aug. 30, 1996) ....................29

**Commission Regulations**

19 C.F.R. § 210.38 ....................33

## STATEMENT OF RELATED CASES

The Commission is unaware of any related case other than the district court action recited in the opening brief of Appellant Zircon Corp. ("Zircon").

## STATEMENT OF THE ISSUES

The Commission found no violation of section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("section 337") for two independent reasons. First, the Commission found that Zircon failed to show the existence of a domestic industry as required by 19 U.S.C. § 1337(a)(2), (a)(3) as to each of the asserted patents. Second, and independently, the Commission found that each asserted patent claim was invalid or not infringed. Specifically, the Commission found each of the eight claims asserted from U.S. Patent No. 6,989,662 ("the '662 patent") to be invalid; among the twenty-four claims asserted from U.S. Patent Nos. 8,604,711 and 9,475,185 ("the '771 patent" and "the '185 patent," respectively), the Commission found sixteen invalid and eight not infringed. Affirming the Commission on the domestic industry issue or affirming the Commission on the patent issues is sufficient to affirm the Commission's finding of no violation of section 337 in this appeal. Accordingly, the Commission submits that the issues on appeal are more properly framed as follows:

**The Domestic Industry Issue**

1. Whether substantial evidence supports the Commission's finding that Zircon failed to establish a domestic industry when Zircon combined its domestic investments in articles protected by each asserted patent with investments in articles unprotected by each asserted patent, and when

Zircon failed to provide reliable evidence quantifying its domestic investments in its "Simon chip" research and development project.

**<u>The Patent Issues</u>**[1]

*For the '662 patent*:

2. Whether substantial evidence supports the Commission's finding that an ordinary artisan would have been motivated to modify an existing prior art stud finder to automatically recalibrate itself given that automatic recalibration had already been advantageously employed in similar sensing devices.

*For the '771 and '185 patents*:

3. Whether substantial evidence supports the Commission's finding that Zircon's own prior art stud finder includes finger holds and thus anticipates, or renders obvious in combination with other prior art, claims 1, 5, 9, and 10 of the '771 patent and claims 1, 2, 5-11, and 13-15 of the '185 patent.
4. Whether substantial evidence supports the Commission's finding that Zircon failed to establish infringement of claims 13-15 of the '771 patent where Zircon failed to compare the corresponding structure for the term

[1] A chart illustrating the Commission's patent-related findings appears on page 16 of the Statement of the Case, *infra*.

"gripping means" to the features of the accused products, despite Zircon stipulating that "gripping means" is governed by § 112, ¶ 6.[2]

5. Whether substantial evidence supports the Commission's finding that Zircon failed to establish that Intervenors (collectively, "Stanley") induced infringement of method claim 22 of the '771 patent and claims 17 and 20-22 of the '185 patent where Zircon did not demonstrate that Stanley's customers ever performed the "rotating step" of those claims, let alone were induced to perform that step by Stanley.

---

[2] The '771 patent was filed prior to September 16, 2012, and is therefore governed by pre-America Invents Act 35 U.S.C. § 112.

## STATEMENT OF THE CASE

To present an accurate description of the patents, accused products, and proceedings below, the Commission provides its own statement of the case.

### I. The Patents at Issue

The technology at issue in this appeal concerns electronic stud finders. A stud finder is a handheld device for locating wooden framing studs encased behind the finished surface of a wall. Appx 15 (n.7). Electronic stud finders perform that function by measuring changes in capacitance behind a wall surface to detect studs. Appx112 (1:29-31). The ’662 patent is drawn to the automation of an electronic stud finder’s recalibration process. Appx106. The ’771 and ’185 patents are drawn to the shape of the hand grips molded into the sides of a stud finder. Appx136; Appx150.

#### A. The ’662 Patent: Automating Recalibration in Electronic Stud Finders

To function accurately, an electronic stud finder must first calibrate its sensors. *See* Appx112 (1:50-52). The calibration involves the stud finder taking a baseline measurement against the wall surface and then using that baseline as a point of comparison for future measurements. Appx112 (1:50-54). If the stud finder takes its baseline measurement over a portion of the wall surface without a stud behind it, then it can identify studs behind other portions of the wall surface by looking for subsequent measurements that differ from the baseline. *See*

Appx112 (1:29-54). However, calibration can fail if the baseline measurement is taken over a stud. *See* Appx112 (1:54-59). The ’662 patent acknowledges that this calibration challenge was known in the art. *See* Appx112 (1:60-65). The ’662 patent also acknowledges that a solution to the problem was known in the art: The stud finder can be programmed to detect the erroneous calibration value and “alert the operator to begin the calibration process again” over a different portion of the wall. Appx112 (1:60-65).

The ’662 patent takes that prior art solution to the miscalibration problem and makes a slight alteration: Rather than alerting the user to restart the calibration process, the stud finder of the ’662 patent itself automatically restarts the calibration process. Appx113 (3:34-37). In so doing, the stud finder of the ’662 patent effectively runs a calibration loop, calibrating over and over as the user moves the stud finder, until a good calibration value is obtained. *See* Appx113 (3:17-40). Figure 2 of the ’662 patent illustrates that loop:




FIGURE 2

Appx108; *see also* Appx112 (2:48-49). Whereas the prior art would notify a user to recalibrate the stud finder if step 204 identified a calibration error, *see* Appx112 (1:60-65), the stud finder of the ’662 patent, in the same situation, automatically updates the calibration value and compares it to a new capacitance measurement to check for an error, Appx114 (5:5-22).

Independent claims 1, 12 and 17 of the ’662 patent are asserted, along with dependent claims 6 and 9 (which depend from claim 1), and dependent claims 13, 15, and 16 (which depend from claim 12). The limitations of the dependent claims

are not at issue on appeal. Independent claim 1 is reproduced here, with the claim limitation at issue italicized:

1. A method of recalibrating a stud sensing device for finding a location of a stud positioned behind a surface, the method comprising the acts of:

holding the stud sensing device at a first location on the surface;

placing the stud sensing device in an [sic] calibration mode;

sensing a first density at the first location in the calibration mode;

setting a calibration value based on the first sensed density;

placing the stud sensing device in an operating mode;

moving the stud sensing device to a second location on the surface;

sensing a second density at the second location;

setting a second density value based on the second sensed density;

the stud sensing device determining if it was calibrated over or near a stud; and

*the stud sensing device recalibrating itself if it determined that the stud sensing device was calibrated over or near the stud.*

Appx115 (7:49-8:3) (emphasis added). The emphasized step above is the automatic recalibration step described in the ’662 patent.

Claim 12, which is an apparatus claim, imposes a similar automatic recalibration limitation in its preamble:

> A stud sensing device capable of *automatically recalibrating* if it has erroneously been calibrated at a location over or near a stud.

Appx115 (8:56-58) (emphasis added). The parties agreed below that the preamble of claim 12 is limiting and treated the automatic recalibration limitation therein as coextensive with the automatic recalibration limitation of claim 1. *See* Appx2234; Appx3417.

Claim 17 differs in that it does not require *automatic* recalibration. Claim 17 recites only:

> [R]ecalibrating the stud sensing device if the stud sensing device was calibrated over or near the stud.

Appx116 (9:37-38). This limitation lacks the "recalibrating itself" language of claim 1 and the "capable of automatically recalibrating" language of claim 12.

### B. The '771 and '185 Patents: Stud Finder Pivot Grips

The '185 patent is a continuation of the '771 patent, and they share a common specification. Each claims either concave ('771 patent) or depressed ('185 patent) finger holds on opposite sides of the stud finder that allow the user to move the stud finder as the user's hand rotates about an axis extending between the finger holds. *E.g.*, Appx147 (6:35-37); Appx161 (6:50-52). Figures 4, 6A, and 6B of the common specification illustrate stud finders with concave or depressed finger grips:




FIG. 4




FIG. 6B

Appx140; Appx143; *see also* Appx145 (2:17-21). The ’771 and ’185 patents acknowledge that stud finders with concave finger grips were known in the art but distinguish that art on the basis that those prior art stud finders also had structural encumbrances that prevented pivoting in the user’s hand. *See* Appx146 (3:8-23); *see also* Appx137.

Independent claims 1 and 13 of the ’771 patent are asserted, along with dependent claims 5, 9, and 10 (which depend from claim 1), dependent claims 14 and 15 (which depend from claim 13), and dependent claim 22 (which depends from unasserted independent claim 17). The limitations of the dependent claims are not at issue on appeal. Independent claims 1, 13, and 17 read in their entirety as follows, with the claim limitation at issue italicized:

1. A hand tool for sensing a measurement behind a target surface, the hand tool comprising:

a housing;

a sensor coupled in the housing; and

*a grip having a pair of three-dimensional concave finger holds positioned at opposite sides of the grip to provide an axis of rotation.*

* * *

13. A hand tool for sensing a measurement behind a target surface, the hand tool comprising:

housing means for providing a housing to the hand tool;

sensing means for sensing a hidden characteristic, wherein the sensing means is coupled in the housing means; and

*gripping means for gripping and for providing an axis of rotation.*

* * *

17. A method for using a hand tool against target surfaces, wherein the hand tool comprises a grip having a pair of three-dimensional concave finger holds positioned on the grip to provide an axis of rotation, the method comprising:

providing the hand tool;

holding the hand tool with a thumb at a first three-dimensional concave finger hold of the pair of three-dimensional concave finger holds and with a finger at a second three-dimensional concave finger hold of the pair of three-dimensional concave finger holds;

positioning the hand tool against a first target surface; and

*rotating the hand tool about the axis of rotation relative to the finger and thumb.*

Appx147-148 (6:31-37, 7:15-21, 7:28-8:8) (emphasis added).

Independent claims 1, 14 and 17 of the ’185 patent are asserted, along with dependent claims 2, 5-11, and 13 (which depend from claim 1), dependent claim 15 (which depends from claim 14), and dependent claims 20-22 (which depend from claim 17). Here also, the limitations of the dependent claims are not at issue on appeal. Rather, the issues concerning the ’185 patent mirror those concerning the “grip” and “rotating” limitations of the ’771 patent. While the ’185 patent recites slightly different formulations of those limitations, the differences are immaterial to the issues on appeal. *See* Appx161-162 (6:45-8:33).

## II. The Products at Issue

Two categories of products are at issue in this appeal. The first are the products accused of infringement, which are stud finders made by Stanley or one of its subsidiaries. The second are the products Zircon relies on to show that a domestic industry exists with respect to articles protected by each of the three asserted patents. *See generally* 19 U.S.C. § 1337(a)(2), (a)(3).

### A. Stanley Accused Products

The products accused of infringing the automatic recalibration patent are different from those accused of infringing the pivot grip patents. These DeWalt and Craftsman stud finders are accused of infringing the automatic recalibration patent:




Appx3731. These Stanley stud finders are accused of infringing the pivot grip patents:




Appx3731. No stud finder is accused of infringing both the automatic recalibration patents and the pivot grip patents.

### B. Zircon's Domestic Industry Products

Zircon relies on its own stud finders to establish a domestic industry—fifty-three different models in all. Of Zircon's fifty-three stud finders, it is undisputed that only fourteen practice the '662, '771, *and* '185 patents. The rest generally practice only the '662 patent or only the '771 and '185 patents. Two practice only

the ’771 patent. The following diagram, created by Zircon, illustrates the breakdown:




Appx60.

### III. The Commission’s Findings Below

The Commission found no violation of section 337 in the proceedings below for the following reasons: (1) Zircon failed to establish the existence of a domestic industry in articles protected by each of its patents; (2)(a) All of the asserted claims of the ’662 patent would have been obvious to an ordinary artisan; and (2)(b) Each asserted claim of the ’771 and ’185 patents was invalid or not infringed.

### A. Findings on Domestic Industry

As a prerequisite to obtaining relief, section 337 requires that a complainant establish that "an industry in the United States, relating to the articles protected by the patent … exists or is in the process of being established." 19 U.S.C. § 1337(a)(2). Background discussion of this "domestic industry requirement," is reserved for Part II.A.1 of the Argument, *infra.*

In the proceedings below, Zircon attempted to satisfy the domestic industry requirement in two ways. First, it attempted to show a domestic industry as to all three asserted patents, blended together, by claiming significant and substantial investments in a unitary "stud finder" domestic industry. Appx56-58. Consistent with the language of section 337 itself, as well as longstanding Commission precedent, the Commission found that Zircon's intermingled investments across three patents and more than 50 different products left the Commission unable to determine whether a domestic industry existed with respect to any article or any patent. Appx59.

Zircon also attempted to show a domestic industry for the '662 patent alone based on its engineering and research and development expenditures related to a microchip—"the Simon chip"—that incorporates the functionalities of the '662 patent. Appx58. The Commission found that the sole evidence supporting Zircon's allocation of a portion of its research and development spending to the

Simon chip was an unexplained and unsupported estimate given by its president. Appx65; *see also* Appx58; Appx14734-14735 (Q/A 115). The Commission also found that Zircon's economic expert "did not conduct any independent investigation or review any documents regarding R&D investments for the Simon chip." Appx65; Appx1401 (122:6-11). Based on those findings, the Commission concluded that Zircon's showing was unreliable and rejected Zircon's reliance on the Simon chip to establish a domestic industry for the '662 patent. Appx65.

Having found that both Zircon's aggregation and Simon chip approaches to proving domestic industry failed, the Commission found that Zircon did not establish a violation of section 337 for any of the asserted patents. Appx65.

### B. Findings on the '662, '771, and '185 Patents

Independent of Zircon's failure to satisfy the domestic industry requirement, the Commission found that Zircon also failed to establish a violation of section 337 because each of its asserted claims was either invalid or not infringed, as summarized below:

| Asserted Claim | Commission Disposition |
| --- | --- |
| ’662 Patent: 1, 6, 9, 12, 13, 15, 16 | Obvious in view of U.S. Patent No. 6,593,754 (“Steber”) (Appx16812), entitled “Compact Subsurface Object Locator,” with German Patent Publication No. DE10159336 (“DE336”) (Appx17329) or U.S. Patent Application Publication No. 2001/0010460 A1 (“Miller”) (Appx17015), and/or U.S. Patent Application Publication No. 2004/0000918 A1 (“Sanoner”) (Appx17486). Appx30; Appx39. |
| ’662 Patent: 17 | Obvious in view of Steber alone or with DE336 or Miller. Appx30; Appx39. |
| ’771 Patent: 1, 5, 9, 10<br>’185 Patent: 1, 2 | Anticipated by Zircon 1. Appx39; Appx53-54. |
| ’185 Patent: 5-11, 13-15 | Obvious in view of Zircon 1 with U.K. Patent Application No. GB 2188432 (“GB432”) (Appx17028) or U.S. Design Patent No. D455,430, (“Krantz ’430) (Appx17442). Appx54-55. |
| ’771 Patent: 13-15 | Not Infringed for failure to apply means-plus-function construction of “gripping means.” Appx47. |
| ’771 Patent: 22<br>’185 Patent: 17, 20-22[3] | Not infringed for failure to establish infringement of “rotating” step. Appx47; Appx52. |

[3] The Commission’s opinion includes a typographical error insomuch as it states: “The ID’s findings that the accused products do not infringe the methods of claims

The Commission's detailed findings will be discussed in Part III ('662 patent) and Part IV ('771 and '185 patents) of the Argument, *infra*.

17 and 20-21 likewise remain supported …." Appx52. The sentence should reference claims 17 and 20-22.

## SUMMARY OF THE ARGUMENT

Zircon failed to establish a violation of section 337 for two reasons. On the one hand, it failed to establish a domestic industry in articles protected by each of the asserted patents. On the other hand, Zircon failed to establish infringement of a single valid claim across its asserted patents. Each failure independently precludes Zircon from establishing a violation of section 337. Affirmance on either issue would be sufficient to dispose of this appeal.

The facts underlying the Commission's domestic industry findings are not in dispute. Zircon lumped together its investments in three patents and fifty-three different stud finder models and provided no evidentiary basis to discern which investments related to which of its products or patents. Zircon's comingled showing as to all of its stud finders failed to permit the Commission to ascertain how much Zircon invested in articles protected by each patent or how much Zircon invested in the exploitation of each patent. Zircon's arguments on appeal, which seek to excuse its inexplicable showing below, are contrary to the text of section 337 and longstanding precedent.

The Commission's patent-specific findings are straightforward applications of established law. As to the '662 patent, the Commission found every asserted claim would have been obvious based on Steber with DE336, Miller, and/or Sanoner. The primary reference, Steber, teaches a manually recalibrated stud

sensor. DE336 and Miller each teach automatic recalibration in sensors for detecting objects behind a wall—DE336 in sensors for detecting the amount of liquid in a tank, among other examples, Miller in live-wire sensors. Sanoner recognizes the similarities between live-wire sensors and stud finders. Given the similarities between the sensor of Steber and the sensors of DE336 and Miller, an ordinary artisan would recognize that automatic recalibration would improve the stud sensor of Steber in the same way that it improved the sensors of DE336 and Miller. Because modifying Steber with automatic recalibration would not have been beyond an ordinary artisan's skill, that modification would have been obvious.

As to the '771 and '185 patents, there are three patent findings that are necessary to reach all of the asserted claims. First, the Commission found that claims 1, 5, 9, and 10 of the '771 patent and claims 1, 2, 5-11, and 13-15 of the '185 patent are anticipated or obvious in view of the Zircon 1 prior art stud sensor. Stanley's expert's testimony and the pictures of the Zircon 1 device itself provide substantial evidence in support of that finding. Second, the Commission found that Zircon failed to establish infringement of claim 22 of the '771 patent and claims 17 and 20-22 of the '185 patent. Substantial evidence supports that finding because neither Stanley's product videos, nor its user manuals, instruct its users to perform the "rotating" step of those claims, and there is no evidence anyone other than

Zircon's expert and his associates have ever performed the claimed method with the accused stud sensors. Third, the Commission found that Zircon failed to establish infringement of claims 13-15 of the '771 patent because it failed to apply the proper construction of "gripping means" in its infringement analysis. That finding is supported by Zircon's express admission that, while it stipulated to a means-plus-function construction for "gripping means," it relied on its analysis and evidence of a different term in a different limitation for its infringement case. On appeal, for all the patent issues, Zircon identifies neither error in the Commission's reasoning nor an absence of substantial evidence in support of that reasoning. Instead, Zircon improperly asks the Court to reweigh the same evidence the Commission already considered.

Zircon has failed to show any error in the Commission's determination of no violation in this investigation. That determination should be affirmed.

## ARGUMENT

### I. Standard of Review

The Commission's final determinations are reviewed under the Administrative Procedure Act. 5 U.S.C. § 706 (2018); *Honeywell Int'l, Inc. v. ITC*, 341 F.3d 1332, 1338 (Fed. Cir. 2003). "The Commission's factual findings are reviewed for support by substantial evidence. Legal conclusions receive *de novo* review." *Comcast Corp. v. ITC*, 951 F.3d 1301, 1306 (Fed. Cir. 2020) (citation omitted). "'Substantial evidence' has been defined as more than a mere scintilla and as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Honeywell*, 341 F.3d at 1338 (quotations omitted). The Court "must affirm a Commission determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from the Commission's conclusion." *Spansion, Inc. v. ITC*, 629 F.3d 1331, 1344 (Fed. Cir. 2010) (quotations omitted).

"Whether a complainant has satisfied the domestic industry requirement generally involves questions of both law and fact." *Motorola Mobility, LLC v. ITC*, 737 F.3d 1345, 1348 (Fed. Cir. 2013). Here, where the domestic industry issue turns on the sufficiency of Zircon's evidence of significant or substantial domestic industry investments, only questions of fact are at issue. *See John Mezzalingua Assocs., Inc. v. ITC*, 660 F.3d 1322, 1327 (Fed. Cir. 2011).

Infringement is a question of fact. *Alloc, Inc. v. ITC*, 342 F.3d 1361, 1368 (Fed. Cir. 2003). Anticipation is also a question of fact. *Microsoft Corp. v. Biscotti, Inc.*, 878 F.3d 1052, 1068 (Fed. Cir. 2017). "Obviousness is a question of law with underlying factual issues, including the scope and content of the prior art" and "differences between the prior art and the claims at issue." *Jazz Pharms., Inc. v. Amneal Pharms., LLC*, 895 F.3d 1347, 1362 (Fed. Cir. 2018). "Whether a skilled artisan would have been motivated to combine references is a question of fact." *Id.*

## II. Zircon Failed to Establish a Violation of Section 337 With Respect to the '662, '771, or '185 Patents Because It Failed to Establish a Domestic Industry in Any of Those Patents.

The Commission's finding that Zircon failed to establish a domestic industry for any of the asserted patents is based on two subsidiary factual findings, both of which Zircon challenges in this appeal. First, the Commission found that Zircon's intermingled evidence—across all its stud finders and all three asserted patents—was insufficient for Zircon to meet its burden to show a domestic industry existed as to *specific* articles protected by *specific* patents. Second, the Commission found that Zircon's factual showing as to investments in its Simon chip, which relate to the '662 patent, was based on unreliable and inadequate testimony. Zircon fails to show error in either finding.

## A. Zircon Cannot Establish Domestic Industries Related to the Articles Protected by Its Patents by Aggregating Its Investments Across All of Its Patents Where Different Articles Are Protected by Each Patent.

Substantial evidence supports the Commission's finding that Zircon failed to show significant or substantial investments in a domestic industry for any of the asserted patents because it indiscriminately lumped together its investments across all three patents and more than fifty products.

### *1. The Commission's Finding that Zircon Did Not Show a Domestic Industry Exists Is Supported by Substantial Evidence.*

Section 337 makes it an unfair trade act to import articles that infringe "a valid and enforceable United States patent." 19 U.S.C. § 1337(a)(1)(B) & (a)(1)(B)(i). Such an unfair trade act can be found only if "an industry in the United States, relating to the articles protected by the patent…exists or is in the process of being established." *Id.* § 1337(a)(2). The statute provides three avenues to demonstrate the existence of a domestic industry in an investigation in which a patent is asserted. *Id.* § 1337(a)(3)(A)-(C). The complainant must show, "with respect to the articles protected by the patent:"

(A) significant investment in plant and equipment;

(B) significant employment of labor or capital; or

(C) substantial investment in its exploitation, including engineering, research and development, or licensing.

*Id.* § 1337(a)(3)(A)-(C). Subparagraphs (A) and (B) are met through significant investment in plant and equipment or employment of labor and capital with respect to the articles protected by the patent. *InterDigital Commc'ns, LLC v. ITC*, 707 F.3d 1295, 1297-98 (Fed. Cir. 2013). Under subparagraph (C), however, the substantial investment is in the patent's exploitation. *Id.*

The Commission employs a flexible and fact-based approach to analyzing a complainant's investments. For example, the Commission has credited evidence of investments on a product-by-product basis. *E.g.*, *Certain Ground Fault Circuit Interrupters* ("*Ground Fault Circuit Interrupters*"), Inv. No. 337-TA-739, Comm'n Op., 2012 WL2394435, *51 (June 8, 2012). So too has it credited evidence of investments on a project-by-project basis in combination with a sales-based allocation of those investments to the articles protected by the patent. *E.g.*, *Certain High-Density Fiber Optic Equipment and Components Thereof*, Inv. No. 337-TA-1194, Comm'n Op., 2021 WL 3809088, *36-37 (Aug. 23, 2021). However, the Commission's flexibility to credit various approaches to showing significant or substantial investments in a domestic industry is not unbounded. The complainant must provide the Commission with sufficient evidence to show that the complainant's domestic investment with respect to the articles protected by each patent is significant under subparagraphs (a)(3)(A) and (a)(3)(B), or that the domestic investment is substantial as to exploitation of the asserted patent under

subparagraph (a)(3)(C). Zircon's showing here—which blurred together more than fifty products across three patents—failed to provide such a basis and thus failed to demonstrate the existence of a domestic industry as to any group of protected articles or as to any asserted patent.

For subparagraphs (a)(3)(A) and (a)(3)(B), Zircon asserted that it invested certain amounts of money, Appx3562 (plant and equipment total), Appx3564 (labor or capital total), for all its stud finders, and it credited those expenses to all of its stud finders, regardless of patent protection. For subparagraph (a)(3)(C), Zircon similarly offered a total amount of investment in its research and development and credited that investment jointly and severally across all its products and all three asserted patents. Appx3559. But Zircon offered no evidence or analysis as to whether the amount invested as to any articles protected by any singular patent, or to exploit any such patent, is significant or substantial. Thus, as the Commission explained:

> 90% of Zircon's investments in its domestic industry products could be attributable to products that practice the '662 patent, and only 10% could be attributable to products that practice the '771 and '185 patents. The opposite could also be true, or the distribution could be fifty-fifty. The point is that, by aggregating all of its investments across domestic industry products that practice different asserted patents, Zircon has failed to provide the Commission with an adequate basis to evaluate the investments and the significance of those investments with respect to each asserted patent.

Appx59. With no evidentiary basis to disaggregate Zircon's investments, the Commission could not quantify the significance of Zircon's investments relating to the articles that practice each patent under § 337(a)(3)(A)-(B), or its investments in engineering and research and development to exploit each patent under § 337(a)(3)(C). *See* Appx59; *Lelo Inc. v. ITC*, 786 F.3d 879, 883 (Fed. Cir. 2015) (requiring quantitative analysis of investment significance). As such, the Commission found that Zircon failed to establish a domestic industry for any of its patents.

The principle that the Commission applied in this investigation—that "aggregating investments in articles that *are* protected by a particular patent with investments in articles that *are not* protected by that patent may preclude meaningful consideration of those investments under the statutory framework required by section 337"—is not new. Appx61-62. In *Certain Audio Digital-to-Analog Converters and Products Containing Same* ("*Audio Digital-to-Analog Converters*"), the Commission explained that "[b]ecause complainant is asserting the '928 patent and the '501 patent, and the articles that practice said patents do not overlap, complainant must demonstrate the existence of two domestic industries." Inv. No. 337-TA-499, Final Initial Determ., 2004 WL 3121325, *61 (Nov. 15, 2004), *unreviewed in relevant part*, Comm'n Notice (Dec. 30, 2004). Similarly, in

*Certain Electronic Imaging Devices* ("*Electronic Imaging Devices*") the Commission held that:

> Because the investments in each Motorola product are specific to only one patent, Flashpoint must separately establish that Motorola's investments in the Admiral were sufficient to establish a domestic industry for the '471 patent and that the investments associated with the Razr Maxx were sufficient to satisfy the economic prong for the '538 Patent.

Inv. No. 337-TA-850, Comm'n Op., 2018 WL 11201935, *53 (April 21, 2014). Zircon, like the complainants in *Audio Digital-to-Analog Converters* and *Electronic Imaging Devices*, chose to assert patents that cover distinct inventions and to rely on investments in domestic industry products that are not protected by all three asserted patents. Like those complainants, Zircon was required to separately establish a domestic industry for articles protected by each of its asserted patents. But Zircon never even tried.

Zircon contends that "there is nothing in the language of section 337 that prevents Zircon from presenting its expenditures for all the asserted patents in aggregate when all the articles protected by these patents are stud finders—the single industry that Zircon develops from its U.S. facilities." Zircon Br. at 57. Zircon is plainly wrong. Section 337 explicitly requires that the domestic industry "relat[e] to the articles protected by the patent." 19 U.S.C. § 1337(a)(2). By contrast, nothing in the statute suggests that a complainant can pad its domestic

industry numbers in articles protected by one patent with investments in other articles protected by an entirely different patent. Moreover, interpreting the statue as Zircon urges would encourage chicanery in that a complainant could use its significant investments in articles protected by one patent to bootstrap trade protection as to products or patents that themselves lack a domestic industry.

At bottom, it was Zircon's burden to show, under subparagraphs (a)(3)(A) and (a)(3)(B), the existence of a domestic industry in "the articles protected by the patent," and for subparagraph (a)(3)(C), the existence of a domestic industry in "its exploitation," *i.e.*, the patent's exploitation. Zircon's failure to put evidence in the record to distinguish its investments in an industry related to articles protected by one patent from those protected solely by another foreclosed such a showing. The Commission did not err in recognizing as much.

#### ***2. Zircon Fails to Show that the Commission's Domestic Industry Findings Lack Substantial Evidence Support.***

Zircon's brief on appeal reinforces why its domestic industry case failed.[4] Zircon acknowledges that not one of its asserted patents protects all fifty-three of the stud finders it relied on to calculate its domestic industry investments. *See*

[4] Zircon's brief also discusses findings made in the initial determination concerning the significance of its aggregated investments that were not adopted by the Commission. *See* Zircon Br. at 46-47. Those findings are not part of the Commission's final determination and thus are not at issue in this appeal.

Zircon Br. at 48-49 (providing "product to patent" chart). Despite that, and despite knowing exactly which stud finders were protected by which asserted patent, Zircon concedes that it opted to present its case by aggregating its investments in all fifty-three stud finders and arguing that it made significant investments in a single "stud finder" domestic industry. *See* Zircon Br. at 50-54.

Zircon cites a handful of decisions that purportedly support its view of the domestic industry requirement, but none of them deal with the type of aggregation Zircon employed in this investigation. *See* Zircon Br. at 57-58. The domestic industry analysis in *Certain Variable Speed Wind Turbines and Components Thereof* dealt only with a single asserted patent and thus is inapposite to the issue in this investigation. *See* Inv. No. 337-TA-376, Comm'n Op., 1996 WL 1056330, *13-14 (Aug. 30, 1996). This Court's decision in *Hyosung TNS Inc. v. ITC* concerned the timing of cognizable domestic industry investments, not the aggregation of investments in articles practicing different patents. *See* 926 F.3d 1353, 1361-62 (Fed. Cir. 2019). Moreover, in the investigation underlying *Hyosung*, the complainant performed exactly the type of allocation necessary to establish a domestic industry based on articles practicing each of several different asserted patents. *See Certain Automated Teller Machines, ATM Products, Components Thereof, and Products Containing the Same*, Inv. No. 337-TA-972, Initial Determ., 2016 WL 11599340, *89 (Nov. 30, 2016) ("Because different

ATM models are asserted to practice each of the asserted patents, Diebold only identifies a subset of these expenditures for each patent."), *unreviewed in relevant part by* Comm'n Notice, 2017 WL 6447230, *3 (Jan. 30, 2017). *Certain Television Sets, Television Receivers, Television Tuners, and Components Thereof* also concerned the timing of the complainant's investments as well as the reliability of its evidence—not investment aggregation. *See* Inv. No. 337-TA-910, Comm'n. Op., 2015 WL 6755093, *33-39 (Oct. 30, 2015). The decision denying rehearing in *InterDigital* supports the Commission as it repeatedly reiterates that the domestic industry must be in articles protected by the patent. *See* 707 F.3d at 1297-98. And *Motorola Mobility* concerned whether "an investment directed to a specifically tailored, significant aspect of the articles is still directed to the article." 737 F.3d at 1351.

Notably, Zircon's brief concedes the very principle it failed to follow: Where "products are protected by multiple asserted patents, the complainant may present its investments on a product-by-product or product grouping basis." Zircon Br. at 58. Zircon takes that principle from *Electronic Imaging Devices*, but rather than following that principle and presenting its investments on a product-by-product or product grouping basis, it lumped all its stud finders together and treated them as though they were one product (or one product group) even though only a small subset are protected by all three patents. Neither *Electronic Imaging*

*Devices* nor the other Commission decisions Zircon cites for the same argument support Zircon's commingling of its investments across distinct products and patents. *See* Zircon Br. at 58-59 (citing *Certain Integrated Circuit Chips*, Inv. No. 337-TA-859, Comm'n Op., 2014 WL 12796437, *24 (Aug. 22, 2014); *Ground Fault Circuit Interrupters*, 2012 WL2394435 at *51).

Zircon's reliance on the Commission's decisions in *Certain Dynamic Random Access Memories* ("*DRAMs*") and *Certain Laser Bar Code Scanners and Scan Engines, Components Thereof and Products Containing Same* ("*Laser Bar Code Scanners*") is also misplaced. Zircon Br. at 59. In each of those investigations, the complainants relied on investments in a single product that practiced all or substantially all of the asserted patents. *See Laser Bar Code Scanners,* Inv. No. 337-TA-551, Order No. 25, 2006 WL 2222926, *5 (July 17, 2006), *unreviewed in relevant part*, Comm'n Notice (Aug. 25, 2006); *DRAMs*, Inv. No. 337-TA-242, Comm'n Op., 1987 WL 450856, *28 (Sep. 21, 1987), *rev'd in part on other grounds*, *Tex. Instruments Inc. v. USITC*, 871 F.2d 1054 (Fed. Cir. 1989). For example, in *Laser Bar Code Scanners*, the Commission explained that:

> [P]roducts [redacted product name 1] and [redacted product name 2] in this investigation are allegedly covered by each of the Symbol Patents. Therefore, Symbol does not need to establish a separate domestic industry for all three product groupings presented in its Motion if it is able to establish domestic industry for either [redacted product name 1 or redacted product name 2].

2006 WL 2222926 at *5. So too, in *DRAMs* the Commission found that "substantial overlap" between the sizes of memory modules that practiced each asserted patent justified the conclusion that they were part of a single domestic industry. 1987 WL 450856 at *28.

This case presents a markedly different situation from *Laser Bar Code Scanners* and *DRAMs* because only fourteen of Zircon's fifty-three stud finders practice all three asserted patents. Zircon's observation that thirty-five of its fifty-three stud finders practice at least two of the three asserted patents is immaterial as it never offered evidence breaking out its investments in those thirty-five products from the other eighteen. Zircon Br. at 59-60. Likewise, Zircon's assertion that eight of its stud finders never generated any revenue and thus should be discounted in determining whether there is substantial overlap among its products is unhelpful because Zircon still cannot show that the forty-five other stud finders practice each of the three asserted patents. Zircon Br. at 60.

Unable to provide legal support for aggregating its stud finder investments, Zircon also attempts to side-step the issue by pointing to a declaration attached to its complaint by its President, Mr. Ronald Bourque, which purports to allocate Zircon's expenditures on a patent-by-patent basis. Zircon Br. at 55. However, the Commission found that Zircon abandoned its ability to rely on the allocation in the declaration due to Zircon's failure to raise it before the presiding administrative

law judge ("ALJ"). Appx61 (n.25). Zircon does not challenge that abandonment finding on appeal, so Zircon's ability to rely on Mr. Bourque's declaration in this appeal is foreclosed. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived."). Moreover, Mr. Bourque's declaration was excluded from evidence by an order granting a motion *in limine*,[5] Appx1258 (Order 37), which is also uncontested on appeal. Zircon cannot now save its domestic industry case with its president's unadmitted declaration.

### B. Zircon Cannot Establish a Domestic Industry Related to Articles Protected by the '662 Patent Based on Investments in the Simon Chip Because It Failed to Provide Reliable Evidence Quantifying Those Investments.

The Commission recognized that "[t]he sole exception to Zircon's aggregated approach to establishing domestic industry is its argument related to its research and development expenditures on the Simon chip." Appx65. Zircon alleged that the Simon chip implements the functionalities of the '662 patent and that its research and development expenses in the Simon chip could be represented

[5] Zircon's brief confuses the administrative record with the evidentiary record. Zircon Br. at 56. While the declaration exists in the administrative record because it was attached to the complaint, it was *excluded* from the evidentiary record. *See* 19 C.F.R. § 210.38(a) (differentiating between "pleadings … and other documents and things properly filed with the Secretary," and "evidence admitted in the record.").

as a percentage of its overall research and development budget. Appx3558. However, the Commission found that Zircon's evidence was not reliable and, on that basis, rejected Zircon's Simon chip domestic industry argument. Appx65. That finding is supported by substantial evidence and should be affirmed.

Zircon's evidence attributing a percentage of its overall research and development spending to the Simon chip amounts to a single conclusory sentence from the witness statement of its President, Mr. Bourque. Appx14734-14735 (Q/A 115). The sentence gives no indication how Mr. Bourque came up with the percentage or what it is based on. Appx14734-14735 (Q/A 115). Still further, Zircon's economic expert, Mr. Walter Bratic, who testified at length in support of Zircon's domestic industry case, made no attempt to verify the accuracy of Mr. Bourque's estimate. Appx1401 (122:6-11). Given the lack of any explanation, analysis, or evidentiary support, the presiding ALJ, who observed both Mr. Bourque and Mr. Bratic on the witness stand, found Mr. Bourque's testimony unreliable. Appx3884. Before the Commission, Zircon pointed to no additional evidence that would have bolstered Mr. Bourque's otherwise conclusory and self-serving testimony. Accordingly, the Commission adopted as its own the ALJ's finding that Mr. Bourque's testimony was unreliable.

On appeal, Zircon again fails to point to any evidence to support Mr. Bourque's conclusory testimony. Instead, Zircon cites nearly two hundred pages

of technical specifications for the Simon chip and summarily asserts that they corroborate Mr. Bratic's and Mr. Bourque's testimony. Zircon Br. at 63 (citing Appx10055-10077; Appx10091-10257). Those technical specifications deal with how the Simon chip works, not how it fits in with Zircon's research and development budget.

Apparently aware of the weakness of its evidence, Zircon alternatively argues that Commission precedent required the ALJ to credit Mr. Bourque's testimony. *See* Zircon Br. at 62-63. No such precedent exists. The two Commission cases Zircon cites do not hold otherwise. In *Certain Solid State Storage Drives, Stacked Electronics Components, and Products Containing Same*, the Commission credited the estimate at issue because it was corroborated by "the sworn testimony of other employees." Inv. No. 337-TA-1097, Comm'n Op., 2018 WL 4300500, *13 (June 29, 2018). And the quotation Zircon reproduces from *Certain LED Lighting Devices, LED Power Supplies, and Components Thereof* is taken from the ALJ's initial determination in that matter, and, importantly, never became part of the Commission's final determination. *See* Inv. No. 337-TA-1081, Comm'n Op., 2019 WL 7423547, *20 (July 23, 2019) ("[T]he Commission has determined to take no position on whether Complainants satisfied the economic prong of the domestic industry.").

Zircon's arguments regarding the Simon chip amount to little more than a request for this Court to reweigh the credibility of Mr. Bourque's testimony. The Court should reject that request, consistent with its observation that an administrative fact-finder's credibility determinations are "virtually unreviewable." *Hornseth v. Dep't of the Navy*, 916 F.3d 1369, 1376 (Fed. Cir. 2019); *see also Hambsch v. Dep't of Treas.*, 796 F.2d 430, 436 (Fed. Cir. 1986) (collecting cases).

## III. Zircon Failed to Establish a Violation of Section 337 With Respect to the '662 Patent Because All of the Asserted Claims of the '662 Patent Would Have Been Obvious to an Ordinary Artisan.

The Commission found all the asserted claims of the '662 patent obvious. That finding is based on a legally sound application of the law of obviousness to subsidiary factual findings that are supported by substantial evidence.

### A. The Commission's Finding that Claims 1, 6, 9, 12, 13, 15, and 16 of the '662 Patent Would Have Been Obvious to an Ordinary Artisan is Legally Correct and Supported by Substantial Evidence.

The Commission found claims 1, 6, 9, 12, 13, 15, and 16 obvious over Steber, Appx16812-16825, in combination with either DE336, Appx17329-17353, Miller, Appx17015-17027, and/or Sanoner, Appx17486-17505, because an ordinary artisan would have been motivated to modify the stud finder of Steber with automatic recalibration based on DE336, Miller, and/or Sanoner. Appx 3794-3795; Appx30-32. That finding is supported by substantial evidence.

### *1. Substantial Evidence Supports the Commission's Finding that an Ordinary Artisan Would Have Been Motivated to Modify Steber with Automatic Recalibration.*

Claims 1, 6, 9, 12, 13, 15, and 16 of the '662 patent require a stud finder capable of automatically recalibrating itself. For claims 1, 6, 9, and 16, that requirement stems from the following limitation in independent claim 1:

> [T]he stud sensing device recalibrating itself if it determined that the stud sensing device was calibrated over or near the stud.

Appx115 (8:1-3). For claims 12, 13, and 15, the requirement stems from the preamble of claim 12, which both parties agreed is limiting:

> A stud sensing device capable of automatically recalibrating if it has erroneously been calibrated at a location over or near a stud.

Appx115 (8:56-58); *see also* Appx2234; Appx3417.

Zircon does not dispute that Steber teaches every limitation of claims 1, 6, 9, 12, 13, 15, and 16 of the '662 patent except for automatic recalibration. Appx32; *see also* Appx3781-3786; Appx3792-3795. Steber teaches a "compact subsurface object locator … for electrically detecting substratum objects hidden behind a surface," Appx16812 (Abstract), and describes the same approach to capacitive sensing of hidden objects as described in the '662 patent. Appx16823 (4:1-40). The user places Steber's sensor against a wall, powers on the device, and then sweeps the sensor across the wall. Appx16823 (4:1-27). The sensor takes a first frequency measurement when it is powered on and then continuously takes new

frequency measurements as it is moved across the wall. Appx16823 (4:1-27). The sensor compares these subsequent measurements to the initial measurement, and when their difference exceeds a certain threshold, the sensor alerts the user that a subsurface object has been detected. Appx16823 (4:1-27). Like the '662 patent, Steber recognized that this approach depended on taking the initial measurement over a portion of wall without an object behind it. Appx16823 (4:27-34). Steber, however, explained that it was "an easy matter" to program the sensor to recognize it had initially been placed over a stud, and that the sensor "could be programmed to flash the LEDs or beep a buzzer in that event to alert the user to start over, placing the device in a different initial position." Appx16823 (4:34-40).

While Steber addressed miscalibrations with an alert to the user, DE336 teaches "a method for the automatic self-adjustment of a sensor." Appx17329. Like the '662 patent and Steber, DE336 recognizes that accurate calibration of prior art capacitive sensors for detecting objects through a wall depended on knowing what was on the other side of the wall where the calibration was performed. *See, e.g.*, Appx17330 (2:20-24, 2:13-41) ("With the assistance of a small button on the sensor, the adjustment is performed automatically in the running application by pushing the button. The application must be brought into a certain state for this purpose, e.g. vessel full or empty."). To address that problem, DE336 teaches programming a sensor like that of Steber or the '662 patent, *i.e.*,

one that compares an initial reference value against subsequent measurements to detect the presence of an object, to automatically update the initial reference value based on the subsequent measurements. *E.g.*, Appx17331 (3:10-23); Appx17334 (9:23-10:15). Thus, like the ’662 patent, DE336 teaches automatically and continuously calibrating a capacitive sensor by comparing an initial reference measurement against subsequent measurements and updating the reference measurement in real time based on the comparisons. Appx17331 (3:10-23); Appx17334 (10:20-30, 10:47-53); Appx17335 (11:16-27).

DE336 is agnostic about the particular sensors to which its automatic calibration method may be applied, explaining that “a large number of conventional sensors can be readily retrofitted with a tracking circuit according to the invention and operated by use of the method according to the invention,” and that a “sensor according to the invention can be used for any application for which a conventional sensor can be used.” Appx17333 (8:38-43). DE336 uses “conventional sensor” broadly to cover a “capacitive or inductive or acoustic sensor, or a sensor for electromagnetic radiation, e.g. an optoelectronic sensor, or a mechanical tactile sensor or a capacitive button.” Appx17333 (8:10-12). The distinguishing feature of a “conventional sensor” is that it is not capable of automated adjustment. Appx17333 (8:13-17). DE336 gives fill level monitoring and distance monitoring as two non-limiting examples of applications that can be

performed with conventional sensors. Appx17333 (8:42-49). The fill level monitoring example particularly is like the stud sensor of the '662 patent in that it involves mounting a capacitive sensor to the wall of a tank and using variations in the measured capacitance to determine whether the level of the material in the tanks rises above or below the sensor. Appx17337-17338 (16:15-17:18).

Miller is drawn to a sensor "for detection and location of an AC signal emanating from a concealed energized electric conductor," *i.e.*, a live wire. Appx17015 (Abstract). Miller teaches a device substantially like the sensors of the '662 patent and Steber: a sensor that a user sweeps across a wall to search for changes in a measurable physical property that can be correlated to the presence or absence of an object behind the wall. Appx17022 (¶ [0002]). Miller recognizes the same initial miscalibration issue as Steber and the '662 patent, and, like the '662 patent, addresses that issue with an automatic recalibration loop. Appx17021 (Fig. 7). Miller's figure 7 illustrates that loop:



FIG. 7

Appx17021; *see also* Appx17025 (¶¶ [0041]-[0043]). This process is nearly identical to the measurement and calibration process described in the ’662 patent’s figure 2. *Compare* Appx17021 *with* Appx108. Sanoner, which is drawn to a stud finder, expressly recognizes that stud finders and live-wire sensors share a common field of invention. Appx17497 (¶[0002]).

The Commission found that the ’662 patent, Steber, DE336, Miller, and Sanoner “share a common field of endeavor insomuch as each is directed to devices and methods for detecting objects behind walls.” Appx33; *see also* Appx112 (1:5-9); Appx16822 (1:15-17; 2:8-11); Appx17330 (1:5-8); Appx17022 (¶ [0001]); Appx17497 (¶[0002]); Appx17649-17656 (Q/A 140-41, 143-45, 147-50, 153-55); Appx17661-17664 (Q/A 163-64, 170-75). Accordingly, Steber, DE336, Miller, and Sanoner are all analogous art to the ’662 patent and are relevant to the obviousness of ’662 patent. Appx33; *see also In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004). When Steber is combined with DE336 or Miller, the combination teaches every limitation of claims 1, 6, 9, 12, 13, 15, and 16 of the ’662 patent. Appx34; *see also* Appx17635-17636 (Q/A 92-95); Appx17639-17649 (Q/A 109-139).

The Commission found that an ordinary artisan would have been motivated to make those combinations for two reasons. First, the Commission found that DE336 and Miller “disclose electronic devices for sensing objects behind walls that have been improved over the prior art by the addition of automatic recalibration to eliminate an additional task that the user would otherwise have to perform manually.” Appx35; *see also* Appx17628-17630 (Q/A71-76). Because Steber also discloses an electronic device for sensing objects behind walls but requires a user to initiate recalibration, the Commission found that “a person of

ordinary skill in the art would recognize the benefit of adding automatic calibration to Steber to improve its stud finder in the same way." Appx35-36; *see also* Appx17654-17655 (Q/A 151, 155). That finding alone is sufficient to demonstrate that an ordinary artisan would have been motivated to add automatic recalibration to Steber based on DE336 or Miller. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007).

Moreover, the Commission found express motivations in the prior art to modify Steber with automatic recalibration. Appx37-39. Specifically, the Commission relied on DE336's express statement of broad applicability to conventional sensors and applications, including capacitive sensors such as the stud finder of Steber. Appx37 (citing Appx17333 (8:38-49)); *see also* Appx17333 (8:8-12). And the Commission found that Miller's express discussion of how automatic recalibration could resolve a miscalibration due to taking an initial calibration over a live-wire—the very same problem that Steber addresses with user intervention—provided another motivation to modify Steber with automatic recalibration. Appx38-39 (citing Appx17025 (¶ [0039])). The Commission also found that an ordinary artisan would not be dissuaded from applying the teachings of Miller to Steber because Miller detects live wires, as opposed to framing studs. Pointing to Sanoner, the Commission found "that stud finders and live wire detectors are similar devices under the umbrella of 'apparatus for locating objects

behind a wall lining.'" Appx33 (citing Appx17497 (¶[0002])). Indeed, Steber itself recognizes that stud sensors and live-wire detectors were combined in the prior art. Appx16822 (1:37-49).

The Commission also found that the combination of Steber with DE336 or Miller "would not have required undue experimentation," and that a "person of ordinary skill would have had a reasonable expectation of success" in making them. Appx39; *see also* Appx17656-17657 (Q/A 156). Accordingly, substantial evidence supports the Commission's finding that an ordinary artisan would have been motivated to modify Steber with automatic calibration and that the inventions of claims 1, 6, 9, 12, 13, 15, and 16 of the '662 patent would have been obvious to that artisan.

#### 2. *Zircon Fails to Demonstrate Legal Error or a Lack of Substantial Evidence with Respect to the Commission's Obviousness Findings.*

Zircon argues on appeal that the Commission's finding that an ordinary artisan would have been motivated to modify Steber with automatic recalibration is error, but its arguments to that effect are scattershot and meritless. Zircon claims that the Commission failed to apply the clear and convincing evidence standard in its obviousness analysis, Zircon Br. at 16-17, but the ALJ expressly stated that, "[u]nder the patent statutes, a patent enjoys a presumption of validity, *see* 35 U.S.C. § 282, which can be overcome only through facts supported by clear and

convincing evidence." Appx3738-3739 (quoting *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006)). The Commission adopted that portion of the ALJ's determination and applied it in its own obviousness analysis. *See* Appx13 ("The Commission adopts the findings in the [Initial Determination] that are not inconsistent with this opinion.").

Zircon claims that the Commission's sole reasoning in support of its obviousness findings amounts to a single sentence in the Commission's opinion, s*ee* Zircon Br. at 17-18, but no fair reading of the Commission's opinion supports that claim. The Commission's obviousness findings, detailed above, are based on subsidiary findings on the level of ordinary skill in the art, Appx31-32, the scope and content of the prior art, Appx32-34, the differences between the prior art and the claimed inventions, Appx32-34, and the absence of any objective indicia of nonobviousness, Appx34-35. They are also based on findings of an ordinary artisan's motivations to combine the prior art and expectations of success in doing so. Appx35-39.

Zircon is also incorrect in its claim that the Commission's obviousness findings are in conflict with the prosecution history. Zircon Br. at 19-20. While Zircon's brief suggests that the prior art considered by the examiner is coextensive with that relied on by the Commission, in reality only Miller and Sanoner were before the examiner, and they were only brought to the examiner's attention *after*

he had already issued a notice of allowance for the issued claims. *Compare* Appx234-239 *with* Appx240-258. Neither Steber nor DE336 was before the examiner, while Miller and Sanoner, though technically before the examiner, were not cited for any purpose. Appx106. Rather, the examiner issued only a single anticipation rejection over a single piece of prior art that forms no part of the Commission's obviousness findings. Appx204-212. Accordingly, the Commission's obviousness finding here was not "simply go[ing] over the same ground travelled by the PTO," *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984), *abrogated on other grounds by Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011), and Zircon misapprehends the presumption of validity, *Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1357 (Fed. Cir. 2003) (recognizing that "[t]he presumption of validity remains the same whether or not the art relied upon at trial was before the examiner."). Here, where Steber discloses every limitation of the asserted claims but automatic recalibration, and DE336 and Miller disclose automatic recalibration along with motivations to employ it in Steber, substantial evidence supports the Commission's underlying factual determinations as to obviousness.

Zircon argues that DE336 and Miller are not analogous art to the '662 patent, but the scope of analogous art is a factual determination, and the Commission's finding that Steber, DE336, and Miller are all analogous art is

supported by substantial evidence. Appx33 (citing Appx112 (1:7-10); Appx17655 (Q/A 154)). By contrast, Zircon's argument that analogous art should be limited to moveable stud finders is plainly outcome-driven with the purpose of excluding stationary sensors like the fill level monitor in DE336 and live-wire sensors as in Miller. That argument is inconsistent with Zircon's representation before the Commission that the level of skill in the art for the '662 patent should be broadly defined as "a bachelor's degree in mechanical or electrical engineering (or equivalent degree/experience) plus two years of industry experience working with electronic hardware devices." Appx31. And the only evidence Zircon cites in support of its position on appeal is the '662 patent's own description of its field of endeavor, which does not exclude stationary sensors or live-wire sensors. Appx112 (1:5-10) ("The present invention relates to sensors that detect objects, *such as studs*, behind a wall covering, such as sheetrock….") (emphasis added); Zircon Br. at 23 (citing same).

Zircon claims that the Commission's motivation to combine findings are based entirely on conclusory expert testimony, Zircon Br. at 23-27, but the Commission's opinion relied on the express statements of broad applicability in DE336, Miller's discussion of automatic recalibration as a solution to the same miscalibration problem identified in Steber, and testimony by Stanley's expert explaining Steber, DE336, and Miller. Appx37 (citing Appx17333 (8:38-49);

Appx17628 (Q/A 72); Appx17649-17650 (Q/A 141); Appx17654-17655 (Q/A 152)). Zircon's sole response to DE336's broad statement of applicability is that "conventional sensor" does not mean "movable stud sensors." Zircon Br. at 24. But, as Zircon's expert admitted, "conventional sensor" in DE336 merely means a sensor that requires user intervention to recalibrate. *See* Appx2116 (833:8-12). Nothing in DE336 precludes a moveable, manually calibrated sensor, like Steber's, from being a "conventional sensor." Zircon's critique of a portion of Stanley's expert's testimony also fails because the Commission did not rely on that testimony as a basis for its motivation to combine findings. *See* Zircon Br. at 25 (citing Appx17635-17636 (Q/A 93)).

Finally, Zircon asserts that the Commission failed "to provide any analysis regarding the actual calibration methodology used in DE336," Zircon Br. at 27, but the Commission credited expert testimony, which "explained in detail why 'it would be straightforward for a [POSA] to program Steber according to the automatic recalibration of DE336.'" Appx37-38 (quoting Appx17657-17660 (Q/A 159)). That testimony includes an extensive discussion of DE336's (and Miller's) calibration methodologies and how they could be applied to Steber. Appx17657-17660 (Q/A 159).

At bottom, Zircon's arguments fail to show that the Commission's finding that every asserted claim of the '662 patent would have been obvious lacks

substantial evidence support. At best, Zircon's arguments amount to a request that this Court reweigh the evidence that the Commission considered. As this Court has explained before, that is not its role in substantial evidence-based review. *Regents of Univ. of Cal. v. Broad Inst., Inc.*, 903 F.3d 1286, 1294 (Fed. Cir. 2018).

### B. The Commission's Finding that Claim 17 Would Have Been Obvious to an Ordinary Artisan is Legally Correct and Supported by Substantial Evidence.

Substantial evidence supports the Commission's finding that claim 17 is obvious over Steber alone or in combination with DE336 and Miller. Claim 17 differs from claims 1, 6, 9, 12, 13, 15, and 16 in that, while it requires recalibration, it does not require automatic recalibration. Instead, claim 17 requires only:

> [R]ecalibrating the stud sensing device if the stud sensing device was calibrated over or near the stud.

Appx116 (9:37-38). By omitting the language "the stud sensing device recalibrating itself" as used in claims 1, 6, 9, and 16, or "[a] stud sensing device capable of automatically recalibrating," as used in claims 12, 13, and 15, the plain language of claim 17 is broader than the automatic recalibration limitations of the other asserted claims.[6]

[6] Claim 17 also differs from the other asserted claims by its inclusion of two limitations drawn to how to determine if a miscalibration occurred that have no counterparts in claims 1, 6, 9, 12, 13, 15, and 16. Those limitations provide:

It is unclear why Zircon argues on appeal that claim 17 requires automatic calibration, because that argument merely makes claim 17 cumulative to the other asserted claims, and susceptible to the same finding of obviousness as those other claims, discussed above. In any event, Zircon's argument, which is based on an inference from the prosecution history, Zircon Br. 31-33, misapprehends the prosecution history itself. While other claims in the '662 patent were only allowed after the patentee amended them to expressly claim automatic recalibration, claim 17 was not among them. Appx222-225. Thus, Zircon improperly relies on amendments made to other claims, but not claim 17, as a basis for departing from the plain language in claim 17. Zircon Br. at 32 (citing Appx222-225). If anything, the prosecution history reinforces that claim 17 does not require automatic recalibration insomuch as it demonstrates why some claims, but not

---

> [C]omparing the calibration value to the second density value; and
>
> determining that the stud sensing device was calibrated over or near the stud if the second density value is more than a threshold amount less than the calibration value.

Appx116 (9:41-45). The ALJ found that Steber alone expressly taught every limitation of claim 17 except for the final "determining" limitation. Appx3794-3795. The ALJ found that the "determining" limitation represented nothing more than an "extremely common technique" that was merely a routine design choice. Appx3794-3795. The Commission adopted the ALJ's obviousness findings for claim 17 without alteration. Appx30. These limitations are not at issue on appeal.

claim 17, include limitations drawn to automatic recalibration. The prosecution history certainly does not demonstrate clear disavowal of the full scope of claim 17 as written. *See generally Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365-66 (Fed. Cir. 2012).

Zircon's second basis is that the specification states that "FIGS 3-6 each illustrate a capacitance curve and an overlying calibration of capacitance of an *auto-recalibration system*, in accordance with the present invention," and that the "embodiments in the specification that discuss Figures 3-6 provide the written support for claim 17." Zircon Br. at 32-33. But those statements fall well short of the lexicography standard required for departing from the plain and ordinary meaning of the language of claim 17. *See generally Thorner*, 669 F.3d at 1365-67.

## IV. Zircon Failed to Establish a Violation of Section 337 With Respect to the '771 and '185 Patents Because Each Asserted Claim of the '771 and '185 Patents Is Either Invalid or Not Infringed.

There are three issues in this appeal that are specific to the '771 or '185 patents, and, taken together, they cover all of the asserted claims of the '771 and '185 patents. First, the Commission found that Zircon's own prior art stud finder, the Zircon 1, includes concave/depressed finger holds such that it anticipates or renders obvious claims 1, 5, 9, and 10 of the '771 patent and claims 1, 2, 5-11, and 13-15 of the '185 patent. Appx47-49; Appx53-55. Second, the Commission found that Zircon failed to establish that the accused stud finders practice the "gripping

means" limitation of claims 13-15 of the '771 patent. Appx47. Third, the Commission found Zircon failed to establish that the accused stud finders practice the "rotating" step of claim 22 of the '771 patent and claims 17 and 20-22 of the '185 patent. Appx47-49; Appx51-52. For each issue, the Commission's findings are in accordance with law, are supported by substantial evidence, and should be affirmed.

### A. The Commission's Findings that Claims 1, 5, 9, and 10 of the '771 Patent and Claims 1 and 2 of the '185 Patent Are Anticipated by the Zircon 1, and that that Claims 5-11 and 13-15 of the '185 Patent Are Obvious Over the Zircon 1 with GB432 or Krantz '430, Are Supported by Substantial Evidence.

Zircon does not dispute that its own Zircon 1 prior art stud finder teaches every limitation of claims 1, 5, 9, and 10 of the '771 patent and claims 1 and 2 of the '185 patent except for each patent's "grip" limitation. Appx3819-3820; Appx3821-3823; Appx3861-3862. Independent claim 1 of the '771 patent includes the following "concave" grip limitation:

> a grip having a pair of three-dimensional concave finger holds positioned at opposite sides of the grip to provide an axis of rotation.

Appx147 (6:35-37). Independent claim 1 of the '185 patent includes a counterpart "depressed" grip limitation:

> only two depressed finger holds positioned at opposite sides of a grip allowing pivoting to provide an axis of rotation.

Appx161 (6:50-52). On appeal, Zircon does not argue that there are any differences between the "concave" grip limitation of the '771 patent or the "depressed" grip limitation of the '185 patent.

In the grip limitation, the Commission construed the term "finger holds" to mean "features for fingers to hold," and construed "axis of rotation" to mean "an imaginary line between two points about which a body is allowed to rotate, excluding finger holds that are designed to resist rotational movement." Appx3803-3804. Zircon does not challenge those constructions on appeal.

There is no dispute that the Zircon 1 product is prior art to the '771 and '185 patents. Appx3819; Appx3861. The Commission found that the Zircon 1 practices the grip limitation based on the oblong indentations on either side of its case, as shown here:

Zircon 1



Appx48; *see also* Appx18041 (image source). The Commission adopted the ALJ's finding that these indentations "can be held by fingers, and they have a shape that curves inward from the surface," which satisfied the concave/depressed finger hold portion of the grip limitation. Appx3822. That finding is supported by the following illustration from the Zircon 1 user manual, which "clearly depicts the device being held by a user's fingers on" those indentations:




Appx3822. For the "axis of rotation" portion of the grip limitation, the Commission credited testimony by Stanley's expert that the indentations "are positioned opposite one another to provide an axis of rotation … such that they create 'an imaginary line between two points about which a body is allowed to rotate,' and further satisfy the limitation of excluding finger holds that are designed to resist rotational movement." Appx17813-17814 (Q/A 115); *see also* Appx1842-1843 (561:4-562:1); Appx48 (citing same). Based on the above findings, the Commission found that the Zircon 1 teaches every limitation of claims 1, 5, 9, and

10 of the ’771 patent and claims 1 and 2 of the ’185 patent and thus anticipated those claims. Appx49; Appx53.

Claims 5-11 and 13-15 of the ’185 patent include additional limitations not at issue on appeal,[7] and the Commission found these claims obvious over the prior art rather than anticipated.[8] In proceedings below and on appeal, Zircon’s argument as to the validity of these patent claims is the same as for the anticipated patent claims: that Zircon 1 does not teach the claimed concave or depressed grips. Zircon Br. at 41-42. Substantial evidence supports the Commission’s underlying factual determination as to the scope and content of the prior art, identical to the anticipation discussion above.

### B. Zircon Fails to Demonstrate Legal Error or a Lack of Substantial Evidence with Respect to the Commission’s Findings that Claims 1, 5, 9, and 10 of the ’771 Patent and Claims 1, 2, 5-11, and 13-15 of the ’185 Patent are Anticipated or Obvious.

Zircon alleges that the Commission’s anticipation and obviousness findings based on the Zircon 1 are error, but fails to identify any underlying finding that

---

[7] Those additional limitations fall into three groups: (1) “running boards” to prevent a user’s fingers from touching the wall (claims 5-9, 14); (2) housing that forms an acute angle at the front (claims 10-11); and (3) housing that forms a “V-notch” at the front center (claim 13).

[8] The Commission found these claims obvious over Zircon 1 combined with GB432, Appx17028, or Krantz ’430, Appx17442. *See* Appx3866, Appx3869-3872.

lacks substantial evidence support or any legal principle that the Commission failed to follow. Instead, Zircon attempts to improperly narrow the scope of the claimed finger holds to exclude the indentations on the sides of the Zircon 1, and it incorrectly claims that finger holds like those in the Zircon 1 were before the USPTO during prosecution. Neither argument has merit.

#### *1. The Claimed Finger Holds Require Neither the Ability to Separate the User's Fingers from the Wall Nor a Pivot Point.*

Zircon's first and primary argument is that the indentations on the sides of the Zircon 1 are not finger holds because they do not "prevent a finger or thumb from slipping off and contacting the wall during use." Zircon Br. at 35. But neither the plain language of the grip limitation, nor the Commission's unchallenged construction of that limitation, require the claimed finger holds to prevent contact between a user's fingers and a wall. All that is required are "features for fingers to hold." Appx3844; Appx1207-1209. The photos of the Zircon 1 in use from Zircon's own brief definitively show that the indentations the Commission relied on are features for fingers to hold:





Appx2558; Appx15500; *see also* Zircon Br. at 36. The illustrations from the Zircon 1 user manual, reproduced *supra*, show the same. *See* Appx3822. Zircon's assertion to the contrary, Zircon Br. at 36, is inconsistent with the location of the user's fingers in those illustrations, which are over the indentations on the sides of the Zircon 1.

Zircon claims that testimony from Stanley's expert, as well as testimony and "conversations" with the inventors of the '771 and '185 patents, support its interpretation of the finger holds limitation, Zircon Br. at 37-38, but the evidence cited does not overcome the substantial evidence to the contrary. Stanley's expert's trial testimony stands only for the irrelevant proposition that the Zircon 1's finger holds do not preclude the user's fingers from touching the wall. *See* Appx1833-1834 (552:2-553:20). Stanley's expert's deposition testimony is only in evidence as a demonstrative, *see* Appx15712, and Zircon points to no place at all where the deposition testimony of, or a transcript of any conversations with, the

inventors of the ’771 and ’185 patents can be found in evidence. Rather than move any of this “testimony” into the evidentiary record, Zircon chose to rely exclusively on its expert’s conclusory characterizations of what was said in those depositions and conversations. *See* Appx14509-14510 (Q/A 65-66, 70). Moreover, a review of the demonstrative exhibit containing Stanley’s expert’s deposition testimony shows that Zircon’s expert’s characterization of the same testimony is inaccurate. *Compare* Appx14509-14510 (Q/A 70) (stating that Stanley’s expert “specifically noted that the Zircon 1 did not have any such [finger] locating features”) *with* Appx15874 (163:5-7) (Stanley’s expert testifying that “Zircon’s stud sensor had reliance on the indentations on both sides for locating your fingers”). Accordingly, contrary to Zircon’s assertion, the Commission did not “fail[] to account for significant expert testimony,” Zircon Br. at 38; it properly exercised its discretion to afford Zircon’s expert’s inaccurate characterizations of non-record testimony little weight.

#### 2. *Finger Holds Like the Zircon 1’s Were Not Before the USPTO During Prosecution.*

Zircon’s second argument is that a design like the Zircon 1 was before the USPTO during prosecution and therefore precludes the Commission’s invalidity finding. Zircon Br. 39-41. As with Zircon’s arguments in connection with the ’662 patent, *see supra* Part III.A.2, Zircon misapprehends the presumption of validity. It is undisputed that the Zircon 1 itself was not before the USPTO.

Accordingly, the Commission's findings do not merely "go[] over the same ground" that the PTO did. *Am. Hoist*, 725 F.2d at 1360. Moreover, even if the Zircon 1 had been before the UPTO, that would not preclude a finding of invalidity. *Abbott Labs.*, 334 F.3d at 1357.

Zircon claims that the designs in the following images were before the USPTO and are *like* the fingerholds of the Zircon 1:









Appx15250. None of these designs include fingerholds like those on the Zircon 1. The features labeled "Like Zircon 1" in the top left image, which originally appeared as part of figure 1 in the provisional application preceding the '771 and '185 patents, *see* Appx12164, are power buttons on one side of the device, not fingerholds. *See* Appx12153 ("FIGURE 1 shows a side profile of a number of stud sensors. Each sensor includes a power button, which is depressed during operation to provide power to internal circuitry."). And the side profile that is labeled "Like Zircon 1" in the top right corner of the bottom image, which originally appeared as figure 2 in the provisional application, *see* Appx12165, is completely flat, without the concave fingerholds of the Zircon 1. *See also* Appx12153 ("FIGURE 2 shows drawings of typical existing sensor grips and buttons. The sides of existing sensor grips are either convex outward or vertical/flat."). As Stanley's expert testified,

nothing in those images looks like the Zircon 1. Appx1823 (542:2-7). The remaining annotations on those images concern prior art the Commission did not rely on for the disclosure of the claimed finger holds in its anticipation and obviousness findings.

Zircon's argument on appeal asks the Court to credit Zircon's expert testimony and reweigh the evidence in Zircon's favor. But that argument fails to demonstrate an absence of substantial evidence supporting the Commission's decision. Moreover, even if such reweighing were permissible, Zircon's reliance on its expert's conclusory testimony fares no better than its reliance on the images themselves. *See* Zircon Br. at 40 (citing Appx14527-14528 (Q/A 147, 148, 151)). The bulk of that testimony is merely conclusory assertions that the inventions of the '771 patent and '185 patent are novel, Appx14527 (Q/A 147), or conclusory assertions that designs like Stanley's prior art references were before the USPTO during prosecution, Appx14527-14528 (Q/A 148, 151). To the extent Zircon's expert ever addressed the Zircon 1 specifically, he merely stated that "many of the prior art examples which Zircon submitted feature 'grips' and power buttons very similar in design to [the Zircon 1]." Appx14527 (Q/A 148). While the power buttons of the stud sensors before the USPTO may indeed be like the power button of the Zircon 1, that point is wholly irrelevant to whether a finger hold design like

the Zircon 1 was before the USPTO. And, as shown above, such a design was not before the USPTO.

Zircon fails to demonstrate the Commission's finding that the Zircon 1 includes the "grip" claimed in the '771 and '185 is not supported by substantial evidence. Zircon having challenged no other aspect of the Commission's anticipation and obviousness findings for those patents, this Court should affirm those findings.

### C. The Commission's Finding that Zircon Failed to Establish Infringement of Claims 13-15 of the '771 Patent Is Supported by Substantial Evidence.

Claim 13 of the '771 patent, and claims 14 and 15 which depend therefrom, include the following limitation:

> [G]ripping means for gripping and for providing an axis of rotation.

Appx148 (7:19-20). Zircon and Stanley agreed that this limitation should be construed according to § 112, ¶ 6 and stipulated that it should be construed as follows:

> **Function:** gripping the hand tool
>
> **Structure:** a pair of concave finger holds positioned at opposite sides of the grip as disclosed in the specification and equivalents thereto at '771 pat. col. 1, ll. 48-53; col. 2,

ll. 49-52; col. 3, ll. 33-65; col. 5, ll. 9-18, 44-52, Figs. 2A, 2B, 6A, 6B, 7, 8.

Appx16269. The parties represented to the ALJ that there was no dispute as to this construction, and the ALJ accordingly adopted it in his initial determination. Appx3803. However, neither party applied this construction in the context of infringement or anticipation. Appx3473-3474; Appx2278-2279. Instead, both treated "gripping means" as though it was coextensive with the "grip" limitation of claim 1. Appx3473-3474; Appx2278-2279. Neither the parties' stipulation as to the construction of "gripping means," nor the briefs they submitted to the ALJ, explained why the "gripping means" of claim 13 was interchangeable with the "grip" of claim 1. Accordingly, the ALJ evenhandedly found that Zircon did not meet its burden to demonstrate infringement and Stanley did not meet its burden to demonstrate anticipation. Appx3812; Appx3823-3824. The Commission adopted those findings and relied on them to find claims 13-15 neither infringed nor anticipated. *See* Appx47 (infringement); Appx49 (anticipation). On appeal, Zircon challenges the Commission's finding that Zircon did not carry its burden to show infringement, Zircon Br. at 42-43, but substantial evidence supports the Commission.

"In order to prove literal infringement of a means-plus-function claim, the plaintiff must show that the accused device performs the recited function through structure that is the same as or equivalent to the corresponding structure set forth in

the specification." *Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1316-17 (Fed. Cir. 2010). Zircon did not even attempt to make that showing below. *See* Appx3473-3474. Instead, by merely referring back to its analysis of the "grip" limitation of claim 1, Zircon apparently presumed that "gripping means" is the same as "grip." But Zircon did not argue in proceedings below that "gripping means" connotes structure and should be interpreted as a "grip." Instead, it agreed to the means-plus-function construction that it now seeks to ignore. Appx16269. Given Zircon's failure to explain to the ALJ why, after stipulating to the construction of "gripping means," Zircon never then applied that construction, the ALJ did not err in finding that Zircon failed to meet its burden to show infringement of claims 13-15.

On appeal, Zircon continues to presume, without explanation, that "gripping means" covers the same structure as the "concave finger holds" of claim 1. Zircon Br. at 42-43. Zircon cites no evidence supporting that presumption, nor does it cite any place where it raised that assertion before the ALJ. *Id.* To the contrary, by specifically stipulating to a means-plus-function construction for "gripping means," Zircon distinguished that term from the structural term "grip" that appears in claim 1. Zircon cannot now escape its failure to carry its infringement burden on the "gripping means" limitation by jettisoning its stipulated construction for one it finds more favorable. The Commission's determination should be affirmed.

Additionally, if the Court were to accept Zircon's belated argument and find that "gripping means" is interchangeable with "concave finger holds," "the claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001). As discussed above, *see* Part IV.A-B, substantial evidence supports the Commission's finding that the Zircon 1 product contains concave finger holds. Accordingly, if the Commission's invalidity findings for the non-means-plus-function claims is affirmed, then Zircon's appeal as to claims 13-15 merely substitutes a finding of invalidity for a finding of noninfringement and does not meet the redressability requirement for justiciability. *See generally Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (observing that redressability requires "a substantial likelihood that the requested relief will remedy the injury in fact") (quotation omitted).

### D. The Commission's Finding that Zircon Failed to Establish Infringement of Claim 22 of the '771 Patent and Claims 17 and 20-22 of the '185 Patent Is Supported by Substantial Evidence.

Claim 22 of the '771 patent is a method claim that, through dependency on unasserted claim 17, includes the following "rotating" limitation:

> [R]otating the hand tool about the axis of rotation relative to the finger and thumb.

Appx148 (8:7-8). Claims 17, and 20-22 of the '185 patent are also method claims, and include a nearly identical "rotating" limitation. Appx162 (8:13-14). In the

investigation below, Zircon attempted to establish a violation of section 337 with respect to these claims by arguing that Stanley induced its customers to infringe each claim with the accused stud finders. The ALJ found that Zircon failed to establish that Stanley induced its customers to infringe these claims for two reasons. First, he found no evidence that Stanley ever induced its customers to rotate the accused stud finders, and second, he found no evidence that any of Stanley's customers had ever rotated the stud finders, whether induced by Stanley or not. Appx3854-3855. In support of the first finding, the ALJ rejected Zircon's assertion that Stanley's product videos and product manuals show or instruct a user to rotate the accused stud finders. Appx3854-3855. And for the second finding, the ALJ explained that there "is no evidence in the record that anyone, other than Mr. Delman, [Stanley's expert,] and his associates, has rotated one of the Accused Stanley Products in accordance with the limitations of claim 17." Appx3855. The Commission adopted those findings as its own and found that Zircon failed to establish infringement of claim 22 of the '771 patent and claims 12 and 20-22 of the '185 patent on those bases. Appx47; Appx52.

Substantial evidence supports the Commission's findings. As to the absence of inducement evidence, Stanley's products videos for the accused stud finders, four in all, show the accused stud finders being held between a finger and a thumb, but never being rotated. Appx12061; Appx12062; Appx12063; Appx12064.

Nothing in those videos suggests to a user that she should rotate the accused stud finders in accordance with the claimed method. Zircon's expert conceded as much on cross-examination. Appx1520 (240:3-19). As for the product manuals, they neither show a stud finder being rotated, nor do they instruct a user to rotate one. *See* Appx6983-7004; Appx7005-7024; Appx7025-7046; Appx7047-7068. To the contrary, the product manuals discourage users from rotating the accused stud finders insomuch as they instruct a user to slide the stud finder side-to-side to locate a stud:




*E.g.*, Appx6984; *see also* Appx6985 (instructing user to "[s]lide the Stud Sensor 100 slowly *across the surface in a straight line*.") (emphasis added). Rotation of the accused stud finders about an axis between their finger holds would not occur if the devices are used according to their instructions.

Zircon's arguments on appeal again ask the Court to reweigh the evidence already considered and rejected by the ALJ and the Commission. Zircon points to

the same products videos and user manuals addressed below and claims they show both that Stanley instructs its users to rotate the accused stud finders and that its users actually do so, but they clearly do not. Zircon Br. at 44 (citing, among others, Appx12061; Appx12062; Appx12063; Appx12064; Appx6983-7004; Appx7005-7024; Appx7025-7046; Appx7047-7068). The three still images taken from a Stanley video that Zircon reproduces in its brief do not represent a user rotating the device in her hand. Zircon Br. at 44 (citing Appx12064 at 00:02, 00:37, and 00:56). They are three separate shots, each showing the stud finder being held without any rotation. *See* Appx12064 (00:02-00:56). And Zircon merely cites the user manuals generally, without identifying any place where rotation is demonstrated or instructed. *See* Zircon Br. at 44. The remainder of Zircon's citations, which are to its expert's testimony, simply state that the expert viewed the user manuals and videos, Appx14452-14453 (Q/A 97), do not address the "rotating" limitation, Appx14453-14455 (Q/A 99, 102, 103, 105), or, inexplicably, deal with invalidity, Appx14504 (Q/A 47-48); Appx14515 (Q/A 94); Appx14517-14518 (Q/A 102-103); Appx14530-14531 (Q/A 159). Zircon fails to identify even a single piece of evidence that detracts from the Commission's noninfringement findings.

To the extent that Zircon, by its statement that the accused stud finders are "capable of being rotated about the axis of rotation relative to a finger and thumb,"

Zircon Br. at 44, means to imply that some Stanley customer, somewhere, must have rotated each accused stud finder in accordance with the claimed method, that is not enough. "Hypothetical instances of direct infringement are insufficient to establish vicarious liability or indirect infringement." *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). Putting a finer point on it: "'the mere sale of a product capable of substantial non-infringing uses does not constitute indirect infringement of a patent.'" *Id.* at 1313-14 (quoting *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004)). Moreover, because the preferred manner of using the accused stud finders, as demonstrated in their user manuals, requires no rotation, Zircon cannot belatedly claim that the accused stud finders necessarily infringe the rotating step. *Id.* The Commission's finding that Zircon failed to establish infringement of claim 17 of the '771 patent and claims 17 and 20-22 of the '185 patent is supported by substantial evidence and should be affirmed.

## CONCLUSION

Accordingly, the Commission requests that the Court affirm the Commission's final determination in this investigation.

Respectfully Submitted,

*/s/ Benjamin S. Richards*

WAYNE W. HERRINGTON
Assistant General Counsel

SIDNEY A. ROSENZWEIG
Acting Assistant General Counsel

BENJAMIN S. RICHARDS
Attorney for Appellee
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 708-5453
Fax: (202) 205-3111
benjamin.richards@usitc.gov

*Counsel for Appellee*
*International Trade Commission*

Date: November 22, 2022

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE, AND TYPE STYLE REQUIREMENTS

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Federal Circuit Rule 32(b)(3), I hereby certify that the attached brief complies with the type-volume limitation and typeface requirements of Federal Rule of Appellate Procedure 32(a)(7) and Federal Circuit Rules 32(b)(1) and 32(b)(2). The brief has been prepared in a proportionally-spaced typeface using Microsoft Office 365, in Times New Roman 14-point font. The brief contains a total of 13,988 words, including 13,831 words obtained from the word-count function of the word-processing system, including all footnotes and annotations, and a manual count of 157 words appearing in the graphics and figures.

*/s/ Benjamin S. Richards*
Benjamin S. Richards

Date: November 22, 2022

## CERTIFICATE OF SERVICE

I, Benjamin S. Richards, hereby certify on this 22nd day of November 2022 that I filed the attached **BRIEF OF APPELLEE INTERNATIONAL TRADE COMMISSION** using this Court's CM/ECF system. Service to principal counsel of record will be accomplished via the Court's CM/ECF system.

*/s/ Benjamin S. Richards*
Benjamin S. Richards
Attorney for Appellee
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 708-5453
Fax: (202) 205-3111
benjamin.richards@usitc.gov

*Counsel for Appellee*
*International Trade Commission*